[No. E001639. Fourth Dist., Div. Two. Mar. 11, 1986.]

IRONWOOD OWNERS ASSOCIATION IX, Plaintiff and Respondent, v. BERNARD SOLOMON et al., Defendants and Appellants.

COUNSEL

Erwin & Anderholt and Michael J. Andelson for Defendants and Appellants.

Guralnick, McClanahan & Zundel, Wayne S. Guralnick and Judith L. Pilson for Plaintiff and Respondent.

OPINION

KAUFMAN, J.—Defendants Bernard and Perlee Solomon (Solomons) appeal from a summary judgment in favor of plaintiff Ironwood Owners Association IX (Association). The judgment granted the Association a mandatory injunction compelling the removal of eight date palm trees from the Solomons' property. The Association was also granted declaratory relief, the court finding the Solomons in violation of the Association's declaration

of covenants, conditions and restrictions (CCRs) for having planted the date palm trees without previously filing a plan with and obtaining the written approval of the Association's architectural control committee.

## Facts[1]

The Solomons purchased a residential lot in the Ironwood Country Club, a planned unit development, in March 1979. They do not dispute that they bought the property with full notice of the CCRs, which were duly recorded in Riverside County in December 1978.

The date palm trees in question were planted sometime during July 1983 and have remained there since. The Solomons have admitted and it is therefore undisputed that they did not file a plan regarding the palm trees with the Association's architectural control committee and accordingly never received a permit or approval for the landscaping addition.

The Association is, pursuant to section 1.02 of the CCRs, "a non-profit California corporation, the members of which [are] all of the several Owners of the Real Property." The Association's members elect a board of directors to conduct the Association's business affairs. Under section 2.04[2] the board has the power to "enforce all of the applicable provisions" of the Association's bylaws, its articles of incorporation, and the CCRs (subd. (a)), to "delegate any of the powers or duties imposed upon it herein to such committees, officers or employees as the Board shall deem appropriate" (subd. (e)), and to "take such other action and incur such other obligations . . . as shall be reasonably necessary to perform the Association's obligations hereunder or to comply with the provisions or objections [sic] of [the CCRs]" (subd. (i)).

The architectural control committee is a body of three persons first appointed by Silver Spur Associates, the original owner and conveyor of the property; committee vacancies are now filled by the board of directors. The following provisions from the CCRs describe the powers and duties of and procedures to be followed by the architectural control committee:

"4.02. *Duties of architectural control committee.* All plans and specifications for any structure or improvement whatsoever to be erected on or moved upon or to any Residential Lot, and the proposed location thereof on any such Residential Lot, and construction material, the roofs and ex-

---

[1]The facts as contained in the record are largely undisputed and are drawn from the complaint, the parties' statements in motions, briefs and on deposition, and supporting declarations.

[2]All further citations will be to the CCRs unless otherwise noted.

terior color schemes, any later changes or additions after initial approval thereof, and any remodeling, reconstruction, alterations or additions thereto on any such Residential Lot shall be subject to and shall require the approval in writing, before any such work is commenced, of the Architectural Control Committee.

"4.03. *Submission of Plans.* There shall be submitted to the Architectural Control Committee two complete sets of plans and specifications for any and all proposed Improvements to be constructed on any Residential Lot, and no structures or improvements of any kind shall be erected, altered, placed or maintained upon any Residential Lot unless and until the final plans, elevations and specifications therefor have received such written approval as herein provided. Such plans shall include plot plans showing the location on the Residential Lot of the building, wall, fence or other structure proposed to be constructed, altered, placed or maintained thereon, together with the proposed construction material, color schemes for roofs, and exteriors thereof, and proposed landscape planting.

"4.04. *Approval of Plans.* The Architectural Control Committee shall approve or disapprove plans, specifications and details within thirty days from the receipt thereof or shall notify the Owner submitting them that an additional period of time, not to exceed thirty days, is required for such approval or disapproval. Plans, specifications and details not approved or disapproved, or for which time is not extended within the time limits provided herein, shall be deemed approved as submitted. One set of said plans and specifications and details with the approval or disapproval of the Architectural Control Committee endorsed thereon shall be returned to the Owner submitting them and the other copy thereof shall be retained by the Architectural Control Committee for its permanent files. Applicants for Architectural Control Committee action may, but need not, be given the opportunity to be heard in support of their application.

"4.05. *Standards for Disapproval.* The Architectural Control Committee shall have the right to disapprove any plans, specifications or details submitted to it if: (i) said plans do not comply with all of the provisions of [the CCRs]; (ii) the design or color scheme of the proposed building or other structure is not in harmony with the general surroundings of the Real Property or with the adjacent buildings or structures; (iii) the plans and specifications submitted are incomplete; or (iv) the Architectural Control Committee deems the plans, specifications or details, or any part thereof, to be contrary to the best interest, welfare or rights of all or any of the other Owners."

## Discussion

### 1. *CCRs Require Submission of Landscaping Plan*

■ We have concluded the court ruled correctly that the CCRs require the submission of a plan to the architectural control committee for substantial landscaping changes such as the planting of eight tall date palm trees. Section 4.02 gives the committee power and duty to review "additions" to residential lots and we interpret this term broadly to include any substantial change in the structure and appearance of buildings and landscapes. We note that in drafting the CCRs, the original conveyor of the subdivision property included section 8.02(b) which provides for liberal construction of its provisions.[3] (See also Civ. Code, § 1370 [formerly Civ. Code, § 1359].) Furthermore, "proposed landscape planting" is specifically enumerated in section 4.03 as an item to be described in plans for such additions filed with the committee, which clearly shows the committee was to take landscaping into account when it weighed the esthetic aspects of plans it received.

■ ■ ■ ■ Because no extrinsic evidence bearing on the interpretation of these provisions of the CCRs was shown to exist,[4] this question was solely one of law (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]) and was therefore properly determined by the court on summary judgment. (See *Milton* v. *Hudson Sales Corp.* (1957) 152 Cal.App.2d 418, 433 [313 P.2d 936].) ■ The court's declaratory conclusion that the Solomons were and are required under the CCRs to submit a plan to the architectural control committee proposing the addition of the eight date palm trees will be affirmed.

### 2. *Association's Request for Injunction Does Pose Questions of Material Fact*

The Association's request for a mandatory injunction compelling the removal of the Solomons' palm trees was in effect a request to enforce an administrative decision on its part disapproving the palm trees as not meeting the standards set forth in section 4.05 of the CCRs. That this is so is

---

[3]Section 8.02(b) provides: "The provisions of [the CCRs] shall be liberally construed to accomplish [their] purpose of creating a uniform plan for the operation of the project for the mutual benefit of all Owners."

[4]At oral argument counsel for the Solomons indicated that in Mr. Solomon's deposition he stated it was not his understanding that landscaping restrictions of this sort applied to the Solomons' property or that the Solomons were required to submit plans for approval of the date palms. But evidence of Mr. Solomon's subjective belief would have been irrelevant; the test is an objective one. (See 1 Witkin, Summary of Cal. Law (1973) Contracts, § 522, p. 445, and authorities there cited.)

demonstrated by the final letter sent by the Association's counsel to the Solomons demanding removal of the palm trees: "Despite the provisions [of the CCRs] referenced above, you unilaterally installed the date palm trees on your property, substantially changing the *uniform development, harmony and balance* of the improvements within the Association. The fact that you did not obtain approval from the Architectural Control Committee is not even at issue." (Italics added.)

 Despite the Association's being correct in its contention the Solomons violated the CCRs by failing to submit a plan, more was required to establish its right to enforce the CCRs by mandatory injunction.[5] When a homeowners' association seeks to enforce the provisions of its CCRs to compel an act by one of its member owners, it is incumbent upon it to show that it has followed its own standards and procedures prior to pursuing such a remedy, that those procedures were fair and reasonable and that its substantive decision was made in good faith, and is reasonable, not arbitrary or capricious. (*Cohen* v. *Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650-651 [191 Cal.Rptr. 209], and cases there cited; *Laguna Royale Owners Assn.* v. *Darger* (1981) 119 Cal.App.3d 670, 683-684 [174 Cal.Rptr. 136]; cf. *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550 [116 Cal.Rptr. 245, 526 P.2d 253]; *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 388 [146 Cal.Rptr. 892]; also cf. Code Civ. Proc., § 1094.5.)

"The criteria for testing the reasonableness of an exercise of such a power by an owners' association are (1) whether the reason for withholding approval is rationally related to the protection, preservation or proper operation of the property and the purposes of the Association as set forth in its governing instruments and (2) whether the power was exercised in a fair and nondiscriminatory manner." (*Laguna Royale Owners Assn.* v. *Darger, supra,* 119 Cal.App.3d 670, 683-684.)

 Several questions of material fact therefore remained before the trial court when it granted summary judgment in this case. First is the question whether the Association followed its own procedures as set forth in the CCRs. According to the CCRs the Association is governed by a board of directors, but there is nothing in the record showing any decision in respect to this matter by the Association's board of directors. Secondly, the record does not document and the parties do not indicate that the architec-

---

[5]Even had the basis for the injunction been solely the failure to submit plans for approval, the record would still be deficient. There is nothing showing final board action on that basis either. Moreover, had that been the sole basis, the injunction should properly have been in the alternative, e.g., either to remove the trees or submit a plan. Here the order was unconditional and absolute.

tural control committee ever met to consider whether or not the Solomons' palm trees violated the standards set forth in section 4.05 of the CCRs. The record contains no indication that either the board or the architectural control committee made any findings, formal or informal, as to whether the palm trees met the standard in section 4.05 upon which the disapproval of the palm trees was apparently based.

There is some indication in the record that the Association attempted to assess the esthetic impact of the palm trees on the community. The matter was discussed at several meetings, members of the board communicated in writing and over the phone with Bernard Solomon, and at least two "polls" were conducted to elicit community opinion. As a matter of law, however, these acts on the part of the Association without appropriate decisions by the governing board or the proper committee did not constitute a reasonable application of the CCRs to the palm trees dispute. The CCRs carefully and thoroughly provide for the establishment of an Architectural Control Committee and impose upon it specifically defined duties, procedures and standards in the consideration of such matters. The record as it stands discloses a manifest disregard for these provisions: whatever decision was made does not appear to be that of the governing body or the committee designated to make the decision; no findings of any sort bridge the analytic gap between facts and the conclusions of the decisionmaker, whoever that was; and the record provides no means for ascertaining what standard was employed in the decisionmaking process.[6]

■ To be successful on a motion for summary judgment, the moving party must show it is entitled to judgment as a matter of law. (*Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 439 [99 Cal.Rptr. 145, 491 P.2d 1121]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) ■ Having failed to establish that its actions were regular, fair and reasonable as a matter of law, the Association was not entitled to a mandatory injunction on summary judgment and the trial court erred in granting that relief.

### Disposition

That portion of the trial court's judgment granting the Association declaratory relief and affirming its interpretation of the declaration of cove-

---

[6]From comments made at oral argument it may appear that these things were in fact done and are simply not reflected in the record. That of course may be properly shown in subsequent proceedings.

nants, conditions and restrictions (¶¶ 1 and 2) is affirmed. Otherwise the judgment is reversed. Each party shall bear its own costs on appeal.

Rickles, Acting P. J., and McDaniel, J., concurred.