[No. G038244. Fourth Dist., Div. Three. Mar. 20, 2008.]

PACIFIC HILLS HOMEOWNERS ASSOCIATION, Plaintiff and Appellant,
v.
JON L. PRUN et al., Defendants and Appellants.

## Counsel

Law Offices of Richard A. Tinnelly, Bruce R. Kermott; Blackmar, Principe & Schmelter, Gerry C. Schmelter and Christina B. VonBehren for Plaintiff and Appellant.

Law Office of Julie M. McCoy and Julie M. McCoy for Defendants and Appellants.

## OPINION

**RYLAARSDAM, Acting P. J.**—Defendants Jon L. Prun and Linda L. Prun appeal from a judgment requiring them to reduce the height of or move a gate and a fence in the front of their residence that violates the height and setback requirements in the covenants, conditions, and restrictions and architectural guidelines adopted by plaintiff Pacific Hills Homeowners Association. They contend the action was not subject to the five-year statute of limitations in Code of Civil Procedure section 336, subdivision (b) (all further statutory references are to this code unless otherwise noted) as the court determined, but was barred by the four-year statute of limitations in section 337.

They also assert that, in any event, the action was barred by laches and waiver, and the court erroneously excluded certain evidence of other nonconforming use. We disagree with each contention.

Plaintiff filed a cross-appeal claiming that portion of the judgment requiring it to pay for two-thirds of the cost of relocation of defendants' gate upon satisfaction of certain conditions was erroneous. It did not address the substance of that issue, however, arguing that because defendants had not satisfied the conditions, its own appeal was moot. We decline plaintiff's request to clarify the effect of that part of the judgment.

Thus, we affirm the judgment.

### FACTS

Defendants' home is located in a planned community subject to a declaration of covenants, conditions and restrictions (CC&R's) and governed by plaintiff. The CC&R's allow plaintiff to adopt reasonable rules and incorporate them into the CC&R's. The CC&R's require "the prior written approval of the Architectural Committee" (committee) before construction of any improvement, including a "fence or wall" and also mandate receipt of plans by the committee and receipt of its approval before construction can begin. Plaintiff also adopted architectural guidelines (guidelines) that limit fences to six feet in height unless they are within 20 feet of the front property line, in which case the maximum height is three feet.

In late 2000 defendants decided to erect a mechanical gate, connected to a fence and pilasters, across their driveway. Jon testified they reviewed the

copy of the CC&R's and guidelines they received when they purchased the home and found no mention of setbacks. Jon also testified that after this action was filed he noticed that the copy of the guidelines they received upon purchase of their home contained only odd-numbered pages; they were missing the page containing the setback requirements. (We note that the guidelines and amended guidelines in the record show the setback requirement was on odd-numbered pages.)

After reviewing those documents, Jon then called the property management company and asked about setbacks. Jon testified that Bill Scales, the architectural administrator, told him that neither plaintiff nor the City of Mission Viejo had setback requirements. According to Jon, Scales only said that color was critical and the gate should be of high quality. Scales assured him "there won't be any problem" or "there shouldn't be any problem" after Jon told him a professional contractor was installing the gate. Jon also testified Scales said he would fax the forms defendants needed for plaintiff's approval and that permission should take only a couple of weeks. Jon testified he understood the approval was "basically a formality."

Scales testified he did not remember the call and would not have checked a city setback requirement for a homeowner because he had no copy of those codes.

In the meantime defendants started building the gate. When Scales learned of it he sent a letter informing them construction violated the CC&R's because prior approval was required; he asked for plans to be submitted. In late November Jon completed the forms he had received from Scales and sent them both to him and to the committee; he did not enclose plans.

In January 2001, plaintiff sent a letter to defendants asking for plans. Defendants re-sent their application with a drawing that did not show the specifics of the gate as required by the CC&R's. Consequently, plaintiff returned it stamped, "Disapproved as submitted" (capitalization omitted) with another request for defendants to "[s]ubmit clear drawings . . . ." Defendants then did so, showing the gate within three feet of the front property line. In mid-February the committee denied approval of defendants' proposed fence and gate because it did not comply with the setback requirements. But defendants had already completed the gate.

In late July and August 2001 plaintiff sent letters to defendants, first asking them to comply with the CC&R's and then inviting them to attend a board meeting in October. Thereafter plaintiff sent a letter giving defendants a November deadline for them to move the gate to comply with the setback requirements and advising it would assess a $100 fine if they did not; plaintiff also invited them to a meeting in December to "discuss the situation."

At some point plaintiff contacted the City of Mission Viejo advising it of the situation. In May 2002, the city sent written notice to defendants that their gate violated its setback requirements. Between November 2002 and January 2003, plaintiff sent four more letters assessing fines and inviting defendants to meetings, which they attended.

In March 2003, plaintiff's lawyer sent a letter to defendants, stating it was plaintiff's "last effort to resolve th[e] matter" and insisting that the gate be moved back. It gave defendants 10 days to advise whether or not they intended to comply; if not plaintiff would take legal action. Jon testified he called the lawyer and explained defendants' "side of the . . . story." He also testified plaintiff's counsel told him he thought that sounded "logical" and "plausible"; he wanted to research the matter and said if he did not get back to defendants, they should "consider the matter closed."

Thirteen months later in April 2004 a different lawyer sent a letter to defendants inviting them to submit the matter to alternative dispute resolution and advising that if they did not respond in 30 days, plaintiff "may authorize" filing of a lawsuit. When Jon called that lawyer he was told, "we're going to make you move the gate." Nothing happened until almost one year later, in March 2005, when plaintiff's lawyer sent another letter suggesting mediation.

When defendants did not mediate, in April 2005 plaintiff filed this action for breach of the CC&R's, nuisance, and declaratory and injunctive relief. The injunction sought was based on violation of the setback requirements, not defendants' failure to obtain prior approval of the project. The case went to trial only on the injunction cause of action.

The court found in favor of plaintiff. It ruled, in part, that the five-year statute of limitations in section 336, subdivision (b) applied and thus the action was filed timely. The court also found defendants had not proven their other affirmative defenses of estoppel, laches, or waiver.

The judgment ordered defendants to lower their fence, gates, and pilasters to a maximum of three feet, or, in the alternative, to set them back to at least 20 feet from the front property line. In that case, the height could be up to six feet. If defendants chose the latter alternative and gave plaintiff timely written notice of their decision, plaintiff would be required to pay two-thirds of the cost of the relocation. If defendants did not timely give notice, they had to pay the entire cost of the ordered corrections. If defendants gave such notice and plaintiff did not agree in writing to pay two-thirds of the cost, the injunction would dissolve and defendants would be allowed to keep the gates and fence as built.

## DISCUSSION

### 1. *Applicable Statute of Limitations*

■ Plaintiff filed this action more than four years but less than five years after defendants erected the gate. Defendants contend that section 336, subdivision (b), which is a five-year statute of limitations, applies only to recorded documents, in this case, CC&R's, and not to unrecorded rules and regulations or guidelines of homeowners associations such as are at issue here. We disagree.

■ Section 336, subdivision (b) provides for a five-year statute of limitations for "[a]n action for violation of a restriction, as defined in Section 784 of the Civil Code." Civil Code section 784 states, " 'Restriction,' when used in a statute that incorporates this section by reference, means a limitation on, or provision affecting, the use of real property in a deed, declaration, or other instrument, whether in the form of a covenant, equitable servitude, condition subsequent, negative easement, or other form of restriction."

■ Defendants maintain that, for this definition to apply, a restriction must be recorded. They advance several grounds for this assertion, including the plain language of the statute and its legislative history, the rule that statutes should be harmonized, the absence of the setback restriction from the recorded CC&R's, and the principle of *ejusdem generis*. Based on our reading of the plain language of section 336, subdivision (b) and Civil Code section 784, we conclude section 336, subdivision (b) does not govern merely recorded restrictions but applies to unrecorded restrictions as well.

 " 'When interpreting statutes, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . ." ' " " 'giving them their usual and ordinary meaning and construing them in context. [Citation.] If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. [Citations.] If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Stephens v. County of Tulare* (2006) 38 Cal.4th 793, 801–802 [43 Cal.Rptr.3d 302, 134 P.3d 288].) This is so " ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' [Citations.]" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

A restriction, as defined in Civil Code section 784, is a limitation on the use of real property, as set out in several specified types of documents, including covenants, equitable servitudes, conditions subsequent, and negative easements, with a catchall description at the end applying to any "other form of restriction."

Nothing in the language states this last category of restriction must be recorded. The fact that all enumerated documents are generally recorded does not compel such an interpretation. Had that been the intent of the Legislature, it could have easily used the language any "other form of recorded restriction."

But it did not, and it is not within our province to do so in the guise of interpretation, even if that seems like a more logical or better policy. If such was its intent, the Legislature has the ability and opportunity to amend the language to make this clear.

 Because we determine the plain meaning of the statute based on its language, we do not resort to extrinsic aids to construe its meaning. (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 508 [66 Cal.Rptr.3d 52, 167 P.3d 666].) Thus, we need not address defendants' other arguments as to the meaning of the statutes.

2. *Laches*

 Defendants also assert that plaintiff's claim is barred by laches. " 'The defense of laches requires unreasonable delay plus either acquiescence in the

act about which plaintiff complains or prejudice to the defendant resulting from the delay.' [Citation.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68 [99 Cal.Rptr.2d 316, 5 P.3d 874].) Defendants argue plaintiff's more than four-year delay in filing the action was "patently unreasonable" and that the delay shows plaintiff acquiesced in defendants' placement of the gate. It points to three 1-year periods in which plaintiff did virtually nothing with respect to defendants' gate.

There is no question plaintiff delayed in enforcing the setback restriction. Despite the spin it tries to put on the facts, plaintiff's alleged "sheer volume" of attempts and "continued . . . efforts to bring [defendants] into compliance" do not explain those lengthy gaps in its contacts with defendants or its extended inactivity. We do not condone this course of conduct and in the right fact situation, which we do not define, such delays could support a finding of laches.

But we agree with the trial court that defendants cannot show prejudice. They began building the gate before they submitted an application for approval of their project and before the committee got involved. The evidence showed construction was finished by as early as November 2000 and no later than February 2001. Thus, it would not have mattered whether plaintiff was diligent.

Nor, despite the delays, can defendants show plaintiff acquiesced. Plaintiff made its opposition to the gate known from the moment it was built, and it never changed its position or communicated to defendants it had changed its position. And, importantly, Jon testified that from February 2001 until the complaint was filed, he understood that plaintiff "appeared to want the gate moved." Thus, the defense of laches must fail.

### 3. *Waiver*

Defendants also assert plaintiff waived its right to enforce the guidelines because it did not apply them fairly, reasonably, or uniformly. They contend plaintiff had the burden of proof to show it in fact did enforce the guidelines fairly, and the court erred in not requiring that plaintiff meet that burden but instead put the burden on defendants to prove an affirmative defense. Finally, defendants claim the court erred by excluding defense evidence that showed plaintiff had arbitrarily allowed a nonconforming use by another property owner. None of these arguments persuades.

"When a homeowners' association seeks to enforce the provisions of its CCRs to compel an act by one of its member owners, it is incumbent upon it to show that it has followed its own standards and procedures prior to

pursuing such a remedy, that those procedures were fair and reasonable and that its substantive decision was made in good faith, and is reasonable, not arbitrary or capricious. [Citations.]" (*Ironwood Owners Assn. IX v. Solomon* (1986) 178 Cal.App.3d 766, 772 [224 Cal.Rptr. 18].) "The criteria for testing the reasonableness of an exercise of such a power by an owners' association are (1) whether the reason for withholding approval is rationally related to the protection, preservation or proper operation of the property and the purposes of the Association as set forth in its governing instruments and (2) whether the power was exercised in a fair and nondiscriminatory manner. [Citations.]" (*Laguna Royale Owners Assn. v. Darger* (1981) 119 Cal.App.3d 670, 683–684 [174 Cal.Rptr. 136].)

Here there was evidence plaintiff followed its ordinary procedures in attempting to enforce the setback requirement. It sent letters demanding that defendants comply with the guidelines, invited defendants to meet with the board, imposed fines, and finally filed suit.

Defendants complain that their next-door neighbors, Anthony and Kathleen Garcia, built in violation of the guidelines but plaintiff did not sue them to compel compliance with the architectural rules. Thus, they conclude, plaintiff lost its right to enforce the restrictions as to defendants. The Garcias obtained plaintiff's approval to build pilasters within the 20-foot setback area. But during construction, which occurred six years before defendants', they apparently built their pilasters six feet high in violation of the guidelines. Plaintiff was unaware that had occurred until defendants pointed it out during the pendency of this dispute.

At that point plaintiff's committee sent letters to the Garcias asking them to modify the pilasters to conform to the guidelines, and the committee and the management company discussed the violation. Plaintiff determined that the Garcias' pilasters were "not as obtrusive as [defendants'] gate was." It also concluded, as its expert, an architect and engineer, testified, that the Garcias' pilasters are only a "minor obstruction" and therefore not as dangerous, compared to defendants' gate, which is a safety hazard.

Although this is not overwhelming evidence, it met plaintiff's burden of proof to show it did address the Garcias' violation and did not act unreasonably or unfairly in not suing them as it did defendants. Thus, the court did not improperly shift the burden of proof to defendants to prove an affirmative defense.

■ "[E]nforcement of the restriction must be in good faith, not arbitrary or capricious, and by procedures which are fair and uniformly applied. [Citation.] The framework of reference, as the court made clear, is not the

reasonableness specific to the objecting homeowner, but reasonableness as to the common interest development as a whole. [Citation.]" (*Liebler v. Point Loma Tennis Club* (1995) 40 Cal.App.4th 1600, 1610 [47 Cal.Rptr.2d 783].) The evidence shows plaintiff took into account the relative safety of the two different structures, thus evaluating them in light of the entire development, in deciding how to proceed.

Defendants argue they had evidence of another homeowner's violation of the guidelines that would support their waiver argument, but the court erroneously excluded it. But nothing in the record shows defendants made an offer of proof, as was their burden, nor does it give us any information about the particulars of the evidence such that we could determine whether it was error to exclude it. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1164–1165 [63 Cal.Rptr.3d 713].)

*4. Plaintiff's Appeal*

Plaintiff filed a cross-appeal, claiming the court abused its discretion in ordering it to pay for two-thirds of the cost of moving defendants' gate. It maintains there was no evidence the cost of relocating the gate would "cost twice" the amount plaintiff's expert testified to. Plaintiff misstates the court's decision.

■ In its tentative ruling the court did note it was "very likely it will cost appreciably more than [the expert's] estimate." But its ruling was not based on evidence of the cost. The tentative ruling stated it was because of "plaintiff's sloppiness in not pursuing this much more promptly . . . ." Injunctions are based on equity (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1166–1167 [42 Cal.Rptr.3d 191]), and we see no abuse of discretion in the result the court fashioned. (See *City of Vernon v. Central Basin Mun. Water Dist.* (1999) 69 Cal.App.4th 508, 516 [81 Cal.Rptr.2d 650].)

■ Plaintiff asserts that its appeal "is apparently moot" because defendants did not timely elect to move the gate back at least 20 feet from the property line, and asks for a "clarification of the effect of the passage of [the] time lines" set out in the judgment. We decline to do so. There is nothing in the record to show what occurred after judgment was entered with respect to the gate. Nor do we give advisory opinions. (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1126 [278 Cal.Rptr. 346, 805 P.2d 300].)

## DISPOSITION

The judgment is affirmed. In the interests of justice, the parties shall bear their respective costs on appeal.

O'Leary, J., and Fybel, J., concurred.