Filed 3/30/22  Emerson Maintenance Assn. v. Gorenberg CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EMERSON MAINTENANCE ASSOCIATION,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>ALAN GORENBERG et al.,<br><br>    Defendants, Cross-complainants and Appellants. | G059246<br><br>(Super. Ct. No. 30-2018-01027462)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Glenn R. Salter, Judge.  Reversed and remanded with instructions.

Anderson Law Firm and Martin W. Anderson for Defendant, Cross-complainant and Appellant Alan Gorenberg.

The Vanderpool Law Firm, Douglas B. Vanderpool and Michael J. Fairchild for Defendant, Cross-complainant and Appellant Ladan E. Hariri.

Pamela Abbott Moore and Nicholas J. Wolfsen for Plaintiff, Cross-defendant and Respondent.

## INTRODUCTION

While the statute itself looks innocent enough, the Byzantine complexity of the application of Code of Civil Procedure section 425.16[1] (the anti-SLAPP statute) has vexed our profession throughout the three decades since its enactment. [2] This case requires us to address an issue that has contributed greatly to that vexation: When does a cause of action arise from constitutionally protected activity?

Answering this question can become an involute process, particularly in cases in which a cause of action is supported by so-called "mixed" allegations; both protected and unprotected conduct. Out of which type of conduct does the cause of action arise? In *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*), the California Supreme Court provided insight on how courts should answer this question: we should sift out allegations of unprotected activity and concentrate our attention on whether the allegations of *protected* activity can provide a basis for liability. (*Id.* at p. 393.) In so doing, the high court endorsed a particularized use of the anti-SLAPP motion more in the vein of a traditional motion to strike: "the Legislature's choice of the term 'motion to strike' reflects the understanding that an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Id.* at pp. 393-394.)

The moving party in this case took the *Baral* court's advice and sought to strike a specific allegation from the complaint. This strategic move turned out to be key,

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The anti-SLAPP statute permits a defendant to file a special motion to strike a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]" (§ 425.16, subd. (b)(1).)

focusing our attention on a single act which we conclude today – contrary to the trial court's ruling – was protected. We therefore reverse and remand for further proceedings as herein described.

**FACTS**

Appellants Dr. Alan Gorenberg and his wife, Ladan Hariri, own a property located on Rogue River Bend in Tustin. The property is within the Orange County courthouse district and is subject to conditions, covenants, and restrictions (CC&R's) propounded by respondent Emerson Maintenance Association (the Association). The CC&R's require residents to submit plans for any construction or improvements on their property to the Association's architectural review committee (ARC) for approval, and such approvals must be received prior to application for building permits.

In 2009, appellants applied to ARC for approval to build a two-story pool house, five-car garage, and attendant landscaping and hardscaping. In September 2009, ARC sent appellants a letter approving the plans with "minor notations" to be followed during construction.

Eight months later, appellants submitted to ARC a request to revise their previous application. This time, some aspects of the plans were approved and others were rejected. By letter dated June 15, 2010, ARC advised it would not approve several paint and stain colors appellants had chosen for exterior-facing doors, windows, trim, eaves, and overhangs. Appellants would need to resubmit with samples of the colors and product names. Appellants never did.

Some time later, appellants planted a number of trees on their property without seeking ARC approval. The Association asked them to provide an update on the status of the alterations, but appellants failed to do so. In November 2015, the Association's counsel sent them a request for alternative dispute resolution because they had never submitted an updated application for the construction work, and there had been no application at all for the landscaping work. Counsel asked appellants to cease and

3

desist all construction until the issues could be resolved.  Appellants did not agree to alternative dispute resolution, but construction stopped on the project, so the Association considered the matter closed.

In February 2018, however, appellants began doing work on the property again without ARC approval.  This work included installing artificial turf, attaching lighting and wrought iron to an Association-owned fence, installing a shed in the backyard visible from common areas, erecting two concrete pillars on Association property, storing building materials, and significantly cutting and, in the opinion of consulting professionals, "mutilati[ng]" trees located on both appellants' and the Association's property.  The Association's counsel again sent a cease-and-desist letter, advising appellants the issues over the disputed construction would hopefully be resolved at a hearing in March 2018.  The letter warned legal action could result should appellants continue the unauthorized work.

At the March 2018 hearing, appellants agreed to provide a complete set of full-size plans and specifications along with samples.  But they did not.  Instead, they gave ARC conceptual plans without elevation, detail, specifications, or samples.  When ARC approval was not forthcoming, appellants proceeded to apply for a building permit from the City of Tustin.  The city issued a permit on June 15, 2018, for gas and electrical line work, construction of two gazebos and a shed, and relocation of a fence.  In response to Association objections, appellants said the work did not require ARC approval.

The Association filed suit in October 2018 and asserted claims for breach of the CC&R's, specific performance, and injunctive and declaratory relief.  Appellants were served with the initial complaint in November 2018 and retained counsel, who discussed with his adversary the possibility of resolving the matter through mediation.  A stipulation was reached, and the matter advanced at a glacial pace until appellants' counsel determined mediation was no longer bearing any fruit.

4

Appellants' counsel withdrew from the mediation agreement on December 4, 2019, and filed an anti-SLAPP motion two days later. Appellants sought to strike the pleading because they contended the lawsuit arose out of a written statement made before an executive agency – their application to the City of Tustin for a building permit. They claimed any cause of action based on the permit lacked merit because it was barred by the privilege provided in Civil Code section 47. Appellants also asked the trial court to exercise its discretion to consider the motion even though it was filed more than 60 days after service of the complaint. The trial court denied the anti-SLAPP motion because it found the lawsuit was not grounded in a protected activity.

## DISCUSSION

The anti-SLAPP statute "'"sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . ., which are brought to challenge the exercise of constitutionally protected free speech rights." . . . "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from *protected* activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."' (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)" (*Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 916.)

The standard of review for the denial of an anti-SLAPP motion is de novo. "'"'. . . Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."' (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 657.)" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

5

**I.       Did the Association's cause of action against appellants arise out of protected activity?**

In the first prong of the anti-SLAPP analysis, the defendant has the burden to do two things: (1) "identify the activity [on which] each challenged claim rests," and (2) "demonstrate that" such "activity is protected by the anti-SLAPP statute." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.) This requires courts to "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.) "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." (*Baral, supra,* 1 Cal.5th at p. 396.)

"Unless they are unreasonable, . . . CC&R's in the declaration governing a common interest development may be enforced as equitable servitudes and as covenants running with the land. (Civ. Code, [§]§ 1354, subd. (a), 1460 et seq.; *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 375–376.) The CC&R's benefit and bind the owners of all separate interests in the project. (Civ. Code, § 1354, subd. (a).) Unless the declaration provides otherwise, CC&R's may be enforced by any owner of a separate interest, by the association or by both. [Citations.] A party who is damaged by a violation of the CC&R's may seek money damages." (*Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1384-1385.)

The Association's claims are grounded in multiple alleged violations of the CC&R's; most of them unprotected (i.e., appellants' construction of improvements without ARC approval) and one of them potentially protected (i.e., the application for building permit). As *Baral* requires, we disregard the former, and focus on the latter. To their credit, appellants recognized the mixed nature of the claim when they filed their anti-SLAPP motion and sought to strike not the complaint as a whole, but only the portions of the complaint impacted by what they argued to be protected activity: their application for a building permit from the city. In this sense, their motion was surgical.

What it leaves us to resolve is whether the building permit application is protected and whether it supplies the elements necessary for the Association's claim.

The anti-SLAPP statute enumerates several categories of protected activity, including "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[.]" (§ 425.16, subd. (e).) Additionally, "any other conduct in furtherance of the exercise of the constitutional right of petition" is protected. (*Ibid.*)

As part of its cause of action for breach of the CC&R's, the Association alleges appellants "have applied for and obtained a permit" from the city "in violation of" the CC&R's. The application itself is not attached to the complaint, but the building permit issued by the city is. While appellants did not provide any evidence of their application, instead stating in conclusory fashion that it was "clearly a written statement made before an executive body," we are nevertheless confident the application for the building permit itself had to consist of communications, either written or oral, to the city's building department. What other form could it take?

The Association contends the application for a building permit was not a protected activity under the authority supplied by *Levy v. City of Santa Monica* (2004)

7

114 Cal.App.4th 1252 (*Levy*), *Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5th 823 (*Shahbazian*), and *Gotterba v. Travolta* (2014) 228 Cal.App.4th 35 (*Gotterba*).  Finding *Shahbazian* particularly persuasive, the trial court agreed.  We do not.

In explaining our disagreement, we initially concede that planning and permitting activities are not always protected under the anti-SLAPP statute.  Our own research reveals the statute has been held to apply when the plaintiff's cause of action is posited on the act of applying for a building permit itself.  (See *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 273 (*Midland Pacific*).)  But it has not applied when the permitting process is not the main act giving rise to a cause of action.  (See *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809 (*Wang*).)

In *Wang*, plaintiffs had sold parcels of property which were eventually included in a retail development.  The plaintiffs alleged their remaining parcels had been wrongfully deprived of street access by the development, and brought claims for breach of contract and fraud, in part because they alleged the developers had falsely represented information in the planning permit application.  (*Wang, supra,* 153 Cal.App.4th at pp. 793, 798.)  In reversing the trial court's grant of the defendant's anti-SLAPP motion, Division One of our court held the statute did not apply because the act of seeking permits was merely incidental to the Wangs' claims.  The "overall thrust of the complaint challenge[d] the manner in which the parties privately dealt with one another . . . and d[id] not principally challenge the collateral activity of pursuing government approvals." (*Id.* at p. 809.)[3]  Moreover, our sister court observed that "[t]here is no bright line rule that all cases involving developments and applications for public permits always involve

3        It is not clear whether the anti-SLAPP motion in *Wang* was directed at the entirety of the complaint, or to specific allegations, but given the discussion in the opinion, we presume the motion was directed to the complaint as a whole.  (*Id.* at pp. 798, 807.)

the type of petitioning conduct protected by the anti-SLAPP statutory scheme." (*Id.* at p. 804.)

Several months after the *Wang* decision, the Second District Court of Appeal addressed a similar issue in *Midland Pacific*. There, the defendants had agreed to obtain city approval of a specific type of development plan for the 27 acres of property they were selling to plaintiff. (*Midland Pacific*, *supra*, 157 Cal.App.4th at p. 267.) When they sought approval of a different type of plan, plaintiff sued for breach of contract. (*Id.* at p. 269.) The Second District found the claim was based on protected activity, distinguishing *Wang* as follows: "[M]odern real estate development almost always requires governmental permits. The anti-SLAPP statute will not protect a developer . . . simply because the developer sought governmental permits for the activity that constitutes the breach. The purpose of the contract in *Wang* was to allow Wal-Mart to develop its property. Governmental approval was simply collateral to that purpose. [¶] Here, in contrast, obtaining governmental approval was not collateral to the contract, it was of the essence of the contract. It was what Midland paid the Kings to do." (*Id.* at p. 273.)

This case falls somewhere between *Wang* and *Midland Pacific*. Like *Wang*, the gist of the Association's case against appellants is focused on their failure to obtain ARC approval for their activities, whether it be the construction work or the permits. But like *Midland Pacific*, appellants' application to the city for a permit was at least in part the subject of the agreement – by the terms of the CC&R's, appellants were not allowed to *apply* for a building permit without approval. Their protected activity was separately actionable as a breach because it was a violation of the CC&R's. And importantly, appellants' anti-SLAPP motion was not directed at the entirety of the Association's case, but at the specific allegation about the permit application. Therefore, it isn't necessary for the "overall thrust" of the complaint to challenge protected activity,

9

as it was in *Wang*. It is sufficient for the specified allegation to involve such activity, and it does.

Levy, *Shahbazian*, and *Gotterba* are not as instructive. Both *Levy* and *Shahbazian* involved the building permitting process, but the anti-SLAPP motions were filed by city entities, and neither complaint targeted the filing of an *application* for a building permit.

In *Levy*, the City of Santa Monica filed an anti-SLAPP when a city council member was sued for contacting planning department employees in response to a constituent inquiry about a potentially non-conforming structure on a neighbor's property. (*Levy*, *supra*, 114 Cal.App.4th at p. 1254.) The Second District Court of Appeal deemed this a protected petition for grievance against the government. (*Id.* at p. 1258.)

The opposite result occurred in *Shahbazian*. There, the City of Rancho Palos Verdes sought to strike a lawsuit founded on its decision to issue a permit to one neighbor while denying a permit to the other. The suit alleged the city was engaging in discriminatory practices by selectively applying building ordinances. (*Shahbazian, supra,* 17 Cal.App.5th at p. 826.) Division Seven of the Second District found the offending conduct was not protected under section 425.16, subdivision (e) because the plaintiffs' "causes of action d[id] not arise from any statements, writings, or conduct in furtherance of the [c]ity's rights to petition or speech. Instead, they ar[o]se from the [c]ity's decisions to grant the [neighbors] a permit for their wall (allegedly in violation of local laws) and to deny the [plaintiffs] a permit for their deck." (*Id.* at p. 835.) Here, there is a communication for which the appellants *are* being sued – their application for a building permit.

*Gotterba* is even less instructive. It was not a building-related case at all, but rather an action pertaining to the existence and enforceability of a confidentiality provision in an employment termination agreement. In the run-up to the litigation,

10

plaintiff received demand letters telling him to cease revealing information about his employment to a national tabloid, and threatening legal action for violation of the confidentiality provision. (*Gotterba*, *supra*, 228 Cal.App.4th at pp. 38-39.) Plaintiff seemed unaware of the provision and filed suit for a declaratory judgment regarding the parties' agreement. (*Id.* at p. 39.) Division Six of the Second District upheld the denial of defendant's anti-SLAPP motion, finding any reference to the demand letters was merely evidentiary support for the complaint, and not its basis. Rather, the basis for the complaint was the scope of the parties' agreement. (*Id.* at p. 42.)

*Gotterba* aptly illustrates the basis for our conclusion regarding prong one of the analysis. As we have already intimated, the Association's reference to appellants' application for a building permit alleges a discrete breach of the CC&R's itself. It is not mere evidentiary support for a breach of the CC&R's, it *is* the breach. Moreover, the motion in *Gotterba* was aimed at plaintiff's entire complaint. Because removal of allegations regarding the protected activity would not change the fundamental nature of the dispute – which was about contractual terms – and the motion did not seek to strike just the allegations of protected activity (so far as we can determine), prong one was not met. Here, we need not consider whether removal of the allegation about appellant's building permit application would change the nature of the dispute. The motion is directed (in the alternative) at that specific allegation. We find appellants met their burden to show the Association's claims arose, at least in part, out of protected activity.

**II.      Did the Association meet its burden to show a probability of prevailing on claims based on the building permit application?**

"'In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must "'state [ ] and substantiate [ ] a legally sufficient claim.'" [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence

11

submitted by the plaintiff is credited." [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submission of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 []; see also *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 317.)" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1235.) Plaintiff's evidentiary submissions should be competent and admissible. (*Id*. at p. 1236.)

The Association only submits evidence that appellants failed to submit revised plans for approval prior to beginning their 2018 construction work, and then obtained a permit from the city. Appellants do not seem to dispute this assertion, but contend the Association failed to submit proper evidence of the CC&R's and did not show damages or an inadequate remedy at law. In our view, neither side's briefing adequately addresses the Association's necessary showing.

As stated previously, the requirements in the CC&R's may be enforced as equitable servitudes. But because the Association seeks to compel compliance with the CC&R's at least partly through a mandatory injunction, there are additional requirements. (See *Ironwood Owners Assn. IX v. Solomon* (1986) 178 Cal.App.3d 766, 771-772 (*Ironwood*); see also *Pacific Hills Homeowners Assn. v. Prun* (2008) 160 Cal.App.4th 1557, 1565-1566.) "When a homeowners' association seeks to enforce the provisions of its CC&R's to compel an act by one of its member owners, it is incumbent upon it to show that it has followed its own standards and procedures prior to pursuing such a remedy, that those procedures were fair and reasonable and that its substantive decision was made in good faith, and is reasonable, not arbitrary or capricious." (*Ironwood,*

12

*supra,* 178 Cal.App.3d at p. 772.)  This showing was not made at all, and as a result, the Association has not met its burden.

Instead, the Association's evidence consists of declarations from the president of its board of directors, Adam J. Gillman and its property manager, Janet M. Salmon.  Gillman indicates the board considered appellants' initial conceptual renderings in 2009 and 2019 for a two-story pool house, five-car garage, landscaping and hardscaping work.  But appellants have never submitted a full set of plans and specifications for the work, as the Association's board requires of all homeowners undertaking such activities.  Eight years passed and appellants never started construction, so the Association considered the matter closed.  But in October 2018, appellants began construction of improvements "that are materially different" from those in their initial renderings.  Salmon's declaration attaches copies of those renderings.

As appellants point out, the Association's evidence does not include the CC&R's.  Technically, this is true, but we find it a minor point given that the CC&R's are an exhibit to the complaint, and appellants have never seemed to question its authenticity.  Section 7.2 of the CC&R's states in pertinent part as follows: ". . . [A]ny Construction Activity involving an exterior Improvement requiring a building permit shall first be reviewed and approved by the Architectural Review Committee prior to requesting a building permit from the City Community Development Department."  The CC&R's provide in section 14.1.3 for dispute resolution procedures including judicial reference and litigation should a homeowner violate the CC&R's.

The complaint also attaches correspondence between the Association and appellants.  The first letter is from the Association and is dated September 21, 2009, in which it approved appellants' plans for a two-story pool house, five-car garage, landscaping and hardscaping.  Appellants were asked to provide "a copy of the [c]ity's final sign-off (if applicable)" on the improvements.  On June 15, 2010, after appellants had submitted their modified conceptual drawings, the Association sent another letter

13

approving in part and denying in part the application. The letter appeared to address aesthetic items like shape of the pool shade, trims, textures, and paint colors. It denied many of the colors appellants had chosen, and required a resubmittal on the colors.

The 2018 work Gillman is apparently referencing seems to have been summarized in the February 23, 2018 letter from the Association's counsel, describing unauthorized installation of artificial turf, backyard lighting, a shed, and the infamous tree "mutilation." But the building permit issued by the city on June 15, 2018, approved a gas line, electrical lines, two gazebos, a shed, view deck and stairs, and movement of a fence. Gillman indicates the fence referenced in the permit has to be a common area wall owned by the Association because it "is the only fence that exists at the top of the slope on" appellants' lot. No permission was sought from the Association to move this fence, and no plans or specifications were provided to the Association to assess appellants' plan for the fence. Moreover, Gillman says the Association was never asked to consider the gas or electrical lines, gazebos or a view deck with stairs.

This evidence indicates appellants did not seek Association approval prior to submitting an application for a building permit for the fence, gas and electrical lines, gazebos, or view deck with stairs. And the CC&R's clearly require that they do so. So the Association has established a violation of the CC&R's based on appellants' applying for an unauthorized building permit. But since the Association makes no showing on any steps it took to follow its own dispute resolution procedures on these issues, it has not met its prong two burden to get mandatory injunctive relief.[4] Since the Association seeks both declaratory and injunctive relief based on the building permit allegation, and appellants' motion pinpoints this allegation, the motion should have been granted as to page 6 of the complaint, lines 7 through 15 only.

---

[4] Because we find the Association's evidence wanting as it is, we see no need to address appellants' evidentiary objections.

14

Appellants also argue the Association's claim based on the building permit is barred by Civil Code section 47. Though it is unnecessary to our conclusion in the final analysis to address this argument, we feel we must do so in order to correct what we see as appellants' misapprehension of the privilege. As Division One of this court recently observed, "the litigation privilege precludes liability for damages in tort," and thus "does not provide a defense to a cause of action that, by its nature, does not seek to impose *tort liability for damages* on a defendant based on his or her litigation related publications." (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 288, 289.) This includes "equitable claims for declaratory or injunctive relief" and enforcement of contractual obligations in the style of the Association's first cause of action for violation of the CC&R's. (*Id.* at pp. 288-291.)

## III.        Timeliness

Although we must reverse the trial court's ruling on the anti-SLAPP motion, we remand for its consideration a threshold question raised by the Association: should the anti-SLAPP motion be denied as untimely? Section 425.16 provides that an anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (*Id.*, subd. (f).) It is undisputed that appellants' motion was filed outside this time window, and the trial court chose not to address the timeliness of the motion because it did not believe appellants had met their prong one burden. Since we disagree with the trial court on the prong one analysis, we remand for its consideration the timeliness issue.

15

## DISPOSITION

The order denying appellants' anti-SLAPP motion is reversed and remanded for proceedings consistent with this opinion.  Appellants to recover their costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.