Filed 5/18/15  The Villas in Whispering Palms v. Tempkin CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE VILLAS IN WHISPERING PALMS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD M. TEMPKIN,<br><br>    Defendant and Appellant. | D065232<br><br><br><br>(Super. Ct. No. 37-2012-00053853-CU-BC-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

McDougal, Love, Eckis, Boehmer & Foley and Steven E. Boehmer, M. Anne Gregory for Defendant and Appellant.

Epsten Grinnell & Howell and Anne L. Rauch, Carrie Timko for Plaintiff and Respondent.

Defendant and appellant Richard Tempkin appeals from a judgment in favor of plaintiff and respondent The Villas in Whispering Palms (Villas) following a bench trial on Villas' complaint in which Villas sought injunctive relief and damages for Tempkin's

breach of its governing documents, particularly Villas' pet restriction provision permitting one dog per household (the pet restriction or rule). In part, the trial court rejected Tempkin's arguments that the pet restriction is unreasonable and Villas' enforcement of the rule arbitrary and capricious, and that Villas treated Tempkin differently than other homeowners with respect to his violations and variances. On appeal, Tempkin contends: (1) the trial court failed to set forth its legal analysis for its ruling that Villas' enforcement of the pet restriction was not arbitrary and capricious; (2) the court erred by finding Villas had provided waivers, as opposed to variances, pertaining to the rule; (3) the pet restriction is unreasonable as a matter of law because it was not applied in a uniform and fair manner; and (4) Villas' board acted unreasonably by failing to follow a governing variance provision and refusing him the right to apply for a variance. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We state the factual background from the undisputed facts and evidence in the record and from the trial court's final statement of decision. (See *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 49-50 [appellate court is not limited to facts or evidence cited in trial court's statement of decision but review extends to the entire record].) Villas is a nonprofit corporation that is organized under the Davis-Stirling Common Interest Development Act (former Civ. Code, § 1350 et seq., repealed by Stats. 2012, ch. 180, § 1, operative Jan. 1, 2014; now Civ. Code, § 4000 et seq.) and subject to governing documents including an amended and restated declaration of restrictions

2

(CC&Rs). Villas has 98 units. It is governed by a five-member board of directors (the board).

Since the Villas' inception in 1979, its governing documents have included a provision that permits each household to have only one dog. In 1998, Villas added a provision to its CC&Rs allowing variances to be granted without limitation to specified use restrictions, including the pet restriction. The provision states that variances are to be in writing and would become effective upon final approval by the board or authorized committee.

In early 2003, the board notified homeowners that it had become aware of a number of homeowners with two dogs and had decided that homeowners would no longer be allowed more than one dog, and those who currently had two dogs would be able to keep them unless they disrupted the community but once the dog had died or was no longer in the home, owners would not be allowed to replace it. Thus, the board granted every homeowner with two dogs a variance on the above-mentioned conditions without homeowners having to submit a written application. In 2005, the board became aware that several homeowners still had more than one dog. It decided to conduct a survey to identify those homeowners and also ascertain whether the homeowners wished to retain the pet restriction. Pending survey results, the board suspended its violation procedures. The survey showed the majority of homeowners wished to retain the restriction, but also voted to permit owners to be granted a variance to the rule. The board required those owners to request a variance by letter and to agree they would not replace the dog if it died or was removed from the home, and would remove one of the

dogs if there were three complaints within a year. Ultimately, the board granted four variances to homeowners with two dogs, under the specified conditions. The board notified homeowners that from that point forward the pet restriction would be strictly enforced. Thereafter, the board enforced the pet restriction against an owner in 2008, sending four violation letters to her and eventually fining her for her violation. In mid-2009, that owner was invited to attend a board hearing on the matter to present her position, given the opportunity to provide documentation to establish she had resolved the violation, and told that if she did not correct it, further enforcement could include legal action.

In 2010, Tempkin moved into the Villas. Though he read the CC&Rs, he did not notice the pet restriction. About a month later, Tempkin's friend moved into Tempkin's unit with her adult dog. In February 2011, they brought a second dog into the home due to the age of the first dog and their desire to have a transition period for the older dog to "mentor" the younger.

In April and July 2011, Villas sent Tempkin violation letters stating it had received a report that he had two dogs in his residence and asking him to take steps to comply with the pet restriction. In August 2011, Villas invited Tempkin to attend an executive session of the board to discuss the matter. He did so and explained his position, asking that he be granted the same variance that other homeowners had received in the past. In November 2011, the board, responding to Tempkin's request for information, advised him in writing that in 2005 it had commissioned a survey of homeowners about the rule and that a majority had voted to retain the rule but "grandfather" in those who already had two dogs,

4

and thereafter four variances were granted. It advised Tempkin that since that time, four homeowners were required to give up one of their two dogs, and that the board had decided to continue to enforce the pet restriction. The board told Tempkin "[t]here will be no further variances given and the policy will continue to be enforced on a consistent and continuous basis." Villas began assessing fines on Tempkin in January 2012.

In May 2012, Villas sued Tempkin. It sought a permanent injunction requiring him to comply with the CC&Rs and remove one of his dogs as well as damages based on Tempkin's failure to pay fines. The matter proceeded to a bench trial after which the trial court issued an initial statement of decision. Tempkin objected on grounds the decision did not accurately describe his arguments, omitted findings on critical issues, and failed to state the legal basis for the court's decision.[1] After considering argument on Tempkin's objections in an unreported hearing, the court issued its final statement of decision. It ruled Villas had proved Tempkin violated a valid and enforceable provision of the CC&Rs, and Tempkin was given "multiple opportunities to both explain his

---

[1] In part, Tempkin asserted the initial statement of decision omitted the following findings on critical issues: "All enforcement of the [pet restriction] after 2005 occurred after Tempkin requested a variance" and "Tempkin remained consistent with his request for a variance because he expressly disagreed with the basis of the denial." Tempkin further objected that the trial court had omitted the "legal basis" for its decision, but that objection was based on the following argumentative statements: "[*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 383 (*Nahrstedt*)], holding that the enforcement of a restriction set forth in CC&R's must be in good faith, not arbitrary or capricious, and by procedures which are fair and uniformly applied should be the legal standard applied in this matter and the Initial Statement of Decision omits a legal analysis" and "Tempkin asserts that the HOA Board may not deny the identical rights, the granting of a variance, exception or waiver in connection with the [pet restriction], which has not been modified and has been operative since 1999."

5

position, and seek a variance." It found unpersuasive Tempkin's contentions that he was treated differently regarding his violation and request for variance and that he was denied due process. As for Tempkin's claim of disparate treatment concerning fines, the court found that "[w]hile . . . some fines were dismissed, this was only after amicable resolution of the violation . . . [and] fines for similar violations were collected." On the claim of Villas' unreasonable enforcement of the pet restriction, the court ruled: "The evidence supports that [Villas] has applied its 'one[-]dog rule' evenly, since 2005. [Villas] seeks informal resolution, followed by official notification and hearing. Each violator was given the opportunity to remedy the situation before being fined. If this did not resolve the issue, escalating fines were imposed. This is precisely the path taken with [Tempkin]. [Tempkin's] argument that he should be treated the same as people who had variances given in 2005, is not persuasive."

Tempkin filed this appeal from the ensuing judgment.

DISCUSSION

I. *Sufficiency of Statement of Decision*

Tempkin contends the trial court prejudicially erred and the judgment must be reversed because it did not set out "legal analysis" for its conclusion that Villas' enforcement of the one dog rule was not arbitrary and capricious. (See *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 265-266 (*Lamden*) [association must show that exercise of its enforcement power is fair and nondiscriminatory, that it followed its own standards and procedures before pursuing a remedy, that its procedures are fair and reasonable, and that its decision was in good

6

faith, reasonable, and not arbitrary and capricious].) He argues the court's final statement of decision "failed to consider the factors and conditions the Board used to grant prior variances or provide any findings regarding the Board's failure to uniformly and fairly apply the one[-]dog rule . . . ." and was deficient because "it only considered enforcement of the one[-]dog rule from post variance in 2005 to the time of trial." Tempkin further contends the trial court erred by failing to set out its "legal analysis as to whether [he] was treated differently and unfairly when he was not permitted to go through the variance process as other homeowners had done in the past."

A. *Legal Principles*

A trial court's statement of decision " 'is required to resolve all material issues of fact, not law.' " (*Bandt v. Board of Retirement* (2006) 136 Cal.App.4th 140, 163.) The statement " ' "is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." ' " (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12.) The court is not required to make an express finding of fact on every legal or factual matter controverted at trial, so long as the statement of decision sufficiently disposes of all the basic issues in the case. (*Pannu*, at p. 1314, fn. 12; *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559; *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736-737, fn. 15.) Further, "[t]he main purpose of an objection to a proposed statement of decision is not to reargue the merits, but to bring to the court's attention inconsistencies between the court's ruling and the document that is supposed to embody and explain that ruling." (*Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292.)

7

Even in cases where the trial court has failed to make findings " 'on a material issue which would fairly disclose the trial court's determination . . . if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings.' " (*Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 745.)

B. *Analysis*

Initially, we observe that Tempkin's objections below (see footnote 1, *ante*) do not correspond with his arguments on appeal, and thus Tempkin did not bring the specific omissions and ambiguities he raises now to the attention of the trial court. (Code Civ. Proc., § 634; accord, *In re Marriage of Schmir*, *supra*, 134 Cal.App.4th at p. 49.) He has thereby forfeited any such contention. (*McBride v. Board of Accountancy of State of California* (2005) 130 Cal.App.4th 518, 527.) Additionally, most of Tempkin's objections do not conform to the purpose or function of proper objections to a statement of decision. (See *Yield Dynamics, Inc. v. TEA Systems Corp.*, *supra*, 154 Cal.App.4th at pp. 559-560 [argumentative specifications of factual issues, and request to reflect the details of the court's reasoning process or the contentions of the parties "failed entirely to perform [the] function [of a statement of decision]"].)

Here, the trial court made specific findings of fact pertaining to the principal controverted issue, namely, Villas' historical enforcement of the pet restriction and its enforcement with respect to Tempkin. Specifically, it found the rule was not enforced

8

until sometime between 2003 and 2005;[2] Villas' board provided waivers to everyone having more than one dog at that time but the waiver only applied to dogs then residing at the residence, and if the dog died or moved away, the waiver ended; one person was given a variance because she had a medical disability and her second dog was a service dog; the only variance granted after 2005 was based upon a medically necessary service dog; the board heard Tempkin's requests to keep the extra dog and he was given multiple opportunities to explain his position and request a variance; no evidence showed Tempkin needed a service dog; no evidence showed Villas ever provided a variance for dog mentoring; and the board dismissed some fines after amicable resolution of the matter, but collected fines for similar violations. As summarized above, it ruled the board applied the rule "evenly, since 2005," and explained its conclusion with specific findings.

---

[2]     This particular finding is supported by substantial evidence, including the testimony of Nancy Sackheim, a board member from 1991 to 1993, 1996 to 2008 and 2011 to mid-2013, who testified in her deposition that she was unaware of any enforcement of the one dog rule from 1991 to 2002; that the board did not use the fine process in connection with the rule before 2003; and she did not personally take action to enforce the rule before 2003 despite seeing a neighbor walking two dogs. Based on the evidence supporting the trial court's finding, we reject Villas' claim, in part based on Tempkin's assertion that the pet restriction was not enforced between 1979 and 2003 and other similar assertions, that Tempkin forfeited any sufficiency of the evidence challenge by reciting facts solely in his favor. Villas references other arguments made by Tempkin that assertedly ignore evidence in Villas' favor. For example, it claims Tempkin contradicted evidence in Villas' favor when he states: " 'It was only after Tempkin notified the Board of Ms. Rosenberg's violation that the Board took any action against her to enforce the one-dog rule.' " But the board member who testified on that point stated, "The timing in there is real close. It's right about the same time that one of our board members went to her to find out . . . . And we were starting the process with her." We disagree that Tempkin's brief so unfairly recites the facts as to constitute a forfeiture of his sufficiency of the evidence arguments.

9

The court's findings fairly reflect its recitation of ultimate facts and basis for rejecting Tempkin's assertion of arbitrary or selective enforcement and Villas' alleged disparate treatment. Tempkin provides no authority indicating the trial court must engage in "legal analysis" in its statement of decision, and we have found none. As stated, the court was not required to make specific factual findings on every evidentiary or legal point, or explain the details of its reasoning process. (*Yield Dynamics, Inc. v. TEA Systems Corp.*, *supra*, 154 Cal.App.4th at p. 560.)

C. *Waiver Argument*

In an associated argument, Tempkin argues the trial court erred by finding Villas provided "waivers" to the one-dog rule between 2003 and 2005 when the record showed they were actually variances, and that the record is absent clear and convincing evidence to support a finding that Villas waived its right to enforce the rule. He contends the court committed "legal error" by not applying the proper analysis of *Nahrstedt*, *supra*, 8 Cal.4th 361, and the error was prejudicial because it caused misapplication of the law, which was reflected in the court's failure to determine in its statement of decision how variances were given in 2003 and 2005, and whether the procedure was uniformly and fairly applied by the board or whether the rule was selectively enforced against him. He repeats his complaint that the court did not provide any analysis or findings regarding the variance process before 2005.

Villas agrees with Tempkin that there is no evidence to show it waived or relinquished any right to enforce its pet restriction. It suggests the trial court used the words waiver and variance interchangeably, and there is nothing indicating the court

10

applied an incorrect standard or more stringent burden of proof as a result. Villas argues the trial court applied the correct standard of judicial deference to the board's exercise of its discretion in denying Tempkin's request for variance, and thus any misstatement in its use of the term "waiver" is harmless.

Tempkin did not object below concerning the trial court's use of the term "waiver" in its statement of decision, and for that reason he has forfeited this contention. (*McBride v. Board of Accountancy of State of California*, *supra*, 130 Cal.App.4th at p. 527.) And we have already rejected Tempkin's claim that the court's statement of decision was deficient for misapplication of the law or failure to set out findings and analysis on Villas' variance process preceding 2005, arguments that Tempkin repeats in connection with his waiver argument. The evidence at trial was that the board granted variances, not waivers, to several homeowners in 2005 after considering its survey of the homeowners pertaining to the pet restriction.[3] There is no indication that the court imposed any clear and convincing burden of proof on the parties, or required Tempkin to meet any more stringent burden of proof at trial in proving his claim of arbitrary, discriminatory, or selective enforcement of the governing rules. The trial court's use of the term "waiver," which had no impact on the respective burdens of proof on the parties, was of no consequence and even if it could be somehow characterized as error, it is manifestly harmless.

---

[3]    We observe Villas' management company in 2009 referred to a previously granted variance as a "waiver" in a letter to a homeowner concerning her two dogs. It appears Villas at times used the terms interchangeably.

11

Because Tempkin has not demonstrated deficiencies in the trial court's statement of decision, "[w]e view the facts most favorable to the judgment under the principle requiring us to presume the lower court's judgment is correct, and draw all inferences and presumptions necessary to support it. [Citations.] ' "Where [a trial court's] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' " (*Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535.)

## II. *Reasonableness of the Pet Restriction*

Tempkin contends Villas' pet restriction is unreasonable and unenforceable as a matter of law because the trial evidence shows it was not applied in a uniform and fair manner. He points to evidence of the blanket variance granted in 2003, the individual variances in 2005, and the fact that after 2005 the board made some efforts to enforce the rule. From this, Tempkin contends it is undisputed the rule "has not been applied in a uniform and fair manner by the Villas" (underlining omitted) and that he was denied rights—the right to apply for a variance and the variance itself—given to other homeowners. The sole authority cited by Tempkin in support of his contentions is *Nahrstedt*, *supra*, 8 Cal.4th at p. 381.

Under former Civil Code section 1354, a common interest development's CC&Rs are "enforceable equitable servitudes, unless unreasonable . . . ." (Former Civ. Code, § 1354, subd. (a); *Nahrstedt*, *supra*, 8 Cal.4th at p. 380; *Liebler v. Point Loma Tennis Club* (1995) 40 Cal.App.4th 1600, 1609.) The "unless unreasonable" language means

12

that restrictions set out by the governing documents of a common interest development are presumptively reasonable, and can be enforced "unless they are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit."  (*Nahrstedt*, at p. 382; accord, *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 88, 91; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 238-239.)

In *Nahrstedt,* the Supreme Court addressed a condominium owner's challenge to the enforceability of a restriction contained in an original recorded declaration that prohibited all animals except domestic fish and birds.  (*Nahrstedt*, *supra*, 8 Cal.4th at pp. 368, 369, fn. 3, 370 ["we granted review to decide when a condominium owner can prevent enforcement of a use restriction that the project's developer has included in the recorded declaration of CC&Rs"].)  *Nahrstedt* concluded that former Civil Code section 1354's presumption of reasonableness could be overcome only if the party challenging the restriction could prove that the restriction:  (1) "violates a fundamental public policy"; (2) "bears no rational relationship to the protection, preservation, operation or purpose of the affected land"; or (3) "imposes burdens on the use of lands it affects that substantially outweigh the restriction's benefits to the development's residents."  (*Nahrstedt*, at pp. 385-386.)  Applying these standards, *Nahrstedt* held that the plaintiff's complaint failed to allege any of the three grounds of unreasonableness: the recorded pet restriction prohibiting cats or dogs but allowing other pets was "rationally related to health, sanitation and noise concerns legitimately held by residents of a high-density condominium project"; the plaintiff's allegations did not focus on the restriction's burdens

13

on the affected property, but centered on her own cats without reference to the effect on the development as a whole; and the plaintiff's contention that the restriction violated her right to privacy under the California Constitution failed because the constitution did not implicitly guarantee condominium owners the right to keep cats or dogs as household pets. (*Id*. at pp. 386-388.)

Here, Tempkin's assertion that the pet restriction is "unenforceable as a matter of law" and his reference to *Nahrstedt* suggests he seeks to apply its unreasonableness standard summarized above. But on appeal, he has not shown how he made, or attempted to make, a showing below on any of the three grounds and he does not argue these grounds in his appellate brief. The trial court did not make findings on any of these three grounds. Presumably Tempkin relies on the *Nahrstedt* court's pronouncement, made during its discussion of the benefits ensuing when courts apply a presumption of validity to recorded CC&Rs, that "when an association determines that a unit owner has violated a use restriction, the association must do so in good faith, not in an arbitrary or capricious manner, and its enforcement procedures must be fair and applied uniformly." (*Nahrstedt*, *supra*, 8 Cal.4th at p. 383, citing *Ironwood Owners Assn. IX v. Solomon* (1986) 178 Cal.App.3d 766, 772 & *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650; see also *Lamden*, *supra*, 21 Cal.4th at p. 263.) Unless the facts are undisputed, however, the question of whether the board has fairly and uniformly enforced a use restriction is one that we review for substantial evidence. (See *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 43.) Here, the issue is subject to substantial

14

evidence review because the court as the trier of fact resolved disputed facts, drew inferences, and assessed the credibility of witnesses, including Tempkin.[4]

Under the principles set out in *Nahrstedt*, *supra*, 8 Cal.4th 361, Tempkin gives us no basis to make a determination of the reasonableness of Villas' pet restriction *as matter of law*. We accordingly reject Tempkin's argument.

### III. *Reasonableness of Villas' Enforcement Actions*

In a separate argument, Tempkin reasserts his claim that the board acted unreasonably in refusing him the right to apply for a variance, and repeats his claims about the fairness of the board's actions. Specifically, Tempkin contends the board acted unreasonably because it did not follow the variance provision in the CC&Rs. He maintains the board "had no knowledge of the variance procedure and . . . failed to follow its own precedent by allowing Tempkin to apply for a variance under the same conditions as had been granted prior homeowners understanding it would be futile." According to Tempkin, though he met all of the factors the board had previously considered in granting

---

[4] For example, Tempkin testified that the board told him more than once at board meetings that it would be futile for him to apply for a variance; that the issue had been solved and voted upon. Tempkin testified that he had attended board meetings, including in November 2011, in which he "consistently ask[ed] the board for a certain request for a variance" but the board never sent him a writing that it had denied any of his requests for a variance. The record, however, contains a November 16, 2011 letter from the board to Tempkin in which it advised Tempkin that "the board decided unanimously to continue enforcing the one[-]dog policy as was the case with its predecessor board" and "[t]here will be no further variances given and the policy will continued to be enforced on a consistent and continuous basis." John McNeil, a board member from June 2009 to the time of trial and one-time board president, testified Tempkin had attended about ten board meetings and that McNeil considered Tempkin's request to keep his dogs as a variance request. McNeil denied telling Tempkin not to bother applying for a variance because the board would not grant it.

past variances and would have complied with the same conditions, the board did not allow him a variance as it did for other homeowners. Tempkin asserts that any decision by the board was therefore not made in good faith, and was unreasonable, arbitrary and capricious. He claims he presented substantial evidence that the board has selectively enforced the pet restriction.

It was Villas' trial burden to show it "followed its own standards and procedures before [suing Tempkin to enforce its pet restriction]. It must demonstrate that its procedures were fair and reasonable, its substantive decision was made in good faith and was reasonable, and its action was not arbitrary or capricious." (*Friars Village Homeowners Assn. v. Hansing* (2013) 220 Cal.App.4th 405, 413.) " 'The criteria for testing the reasonableness of an exercise of such a power by an owners' association are (1) whether the reason for withholding approval is rationally related to the protection, preservation or proper operation of the property and the purposes of the Association as set forth in its governing instruments and (2) whether the power was exercised in a fair and nondiscriminatory manner.' " (*Ironwood Owners Assn. IX v. Solomon*, *supra*, 178 Cal.App.3d at p. 772.) "Generally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with public policy." (*Nahrstedt*, *supra*, 8 Cal.4th at p. 374.) And, a community association's reasoned decisionmaking on ordinary matters, if those decisions are in keeping with these rules, are entitled to deference. (*Lamden*, *supra*, 21 Cal.4th at pp. 253, 265, 270-271 [applying the rule of judicial deference where owners

16

"seek to litigate ordinary maintenance decisions entrusted to the discretion of their associations' boards of directors"]; see *Watts v. Oak Shores Community Association* (2015) 235 Cal.App.4th 466, 473 [judicial deference rule extends beyond mere maintenance decisions and can extend to decision to deny owner's application for a room addition].)

If the trial court resolves factual disputes to decide questions of good faith or arbitrary enforcement, we review its decision for substantial evidence.  In a substantial evidence challenge to a judgment following a bench trial, " ' "the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]'  [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of fact are liberally construed to support the judgment." ' "  (*Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.)  Where the essential facts are undisputed, "in reviewing the propriety of the trial court's decision, we are confronted with questions of law.  [Citations.]  Moreover, to the extent our review of the court's declaratory judgment involves an interpretation of the [CC&Rs] provisions, that too is a question of law we address de novo." (*Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974.)[5]

_____

[5]     Tempkin does not address what standard of review applies to the trial court's determination that the board did not enforce the pet restriction in an arbitrary or capricious manner, and did not treat Tempkin differently.  Citing this court's decision in

17

Applying these standards compels us to affirm the judgment. Tempkin's first contention—that Villas had no knowledge of the variance procedure—is unsupported by the portion of the record cited by Tempkin. He cites to his own trial testimony that on several occasions, a board member told him it would be futile to apply for a variance. This testimony does not demonstrate that the board was generally ignorant of the CC&Rs' procedures, much less the variance procedure. And, the record as a whole contains substantial evidence contradicting Tempkin's assertion. In particular, board member Sackheim testified that from 1999 to the present, she understood that a resident had the right to apply for a variance to any CC&Rs provision and rule or regulation. Letters from 2005 and 2012 from a board representative indicate that variances were granted to at least three homeowners in 2005 and 2008, contradicting any suggestion that the board was unaware of the variance provision at the time it took steps to enforce the pet restriction against Tempkin. To the extent there is arguably contrary evidence,[6] on substantial

---

*City of Oceanside v. McKenna* (1989) 215 Cal.App.3d 1420, he asserts generally that the issue of "reasonableness" is a legal determination. But the reasonableness of a restriction in CC&Rs is a different question than the reasonableness of a community association board's enforcement actions against homeowners. *City of Oceanside* involved a city's motion for summary judgment concerning the reasonableness of a restriction in a publicly subsidized condominium project prohibiting an owner from renting or leasing his unit. (*Id*. at p. 1422.) In that context, and responding to the appellant's contention that summary judgment was error because the issue of reasonableness presented a triable issue of fact, this court held that the issue of reasonableness of the restriction in the CC&Rs "is not a factual one, but a legal one." (*Id*. at p. 1424.)

6       Tempkin points to deposition testimony read into the record at trial in which board president McNeil testified he was not aware of a variance section in the CC&Rs "as such." He also points to McNeil's deposition testimony that he understood the variance provision applied to architectural changes, not to the pet restriction. But at trial McNeil

18

evidence review, we disregard such evidence and accept as true the evidence favorable to the judgment. (*Estate of Teel* (1944) 25 Cal.2d 520, 527; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [if substantial evidence is present, no matter how slight in comparison with the contradictory evidence, the judgment must be upheld; as a general rule the reviewing court will look only at the evidence and reasonable inferences supporting the successful party and disregard the contrary showing].)

Tempkin argues he presented evidence showing the board selectively enforced the pet restriction. According to Tempkin, evidence that the board did not enforce the rule for many years, then granted a blanket variance in 2003, then gave other variances in 2005 but did not enforce the rule in 2006 and 2007, then remedied other violations without court action, demonstrates selective enforcement. He maintains the evidence shows he was never allowed to submit a written request as the homeowners had been in 2005. But the trial court found that the board evenhandedly enforced the pet restriction since 2005, and that finding is supported by substantial evidence. McNeil testified the board had enforced the pet restriction against several owners while he was on the board.

testified he did not deny Tempkin's request for a variance for the reason that he thought the provision did not apply to the pet restriction. McNeil also testified he understood a homeowner has the right to apply for a variance. Tempkin further points to trial testimony from former board president Jon Fagerstrom that Fagerstrom was not aware of a specific variance section in the CC&Rs, but worked with counsel or the management company on the issue. However, Fagerstrom also testified that when he granted the variances to homeowners in 2005, he familiarized himself with the CC&Rs at the time. Fagerstrom testified that in 2005, he was granting variances to the homeowners under the conditions mentioned above. Even assuming these particular board members were not familiar with the specific variance provision, that does not demonstrate other board members lacked such familiarity or the board as a whole did not act in accordance with the variance provision.

19

Villas presented evidence that in July 2009, August 2009, October 2009, November 2009, October 2010, June 2011, July 2011, December 2011, April 2012, May 2012, July 2012, September 2012, October 2012 and November 2012, the board sent violation letters to homeowners who had been reported to have more than one dog within their unit. Owners were invited to attend a board meeting to address the matter and present a rationale for having two dogs. In some cases, the matter was resolved when the owner's tenants left or a dog was removed. In other cases, the board levied fines that were paid out of property sale escrows or it waived fines. McNeil testified that fines were used to induce people to come into compliance; if the board received assurances of compliance, it would waive fines pending execution of the homeowner's promise. In another case in which the homeowner did not resolve the matter, the board advised her it could elect to proceed with legal action. These are the same types of actions taken by the board concerning Tempkin's violation.

The fact the board took no action to enforce the rule for many years before 2004 is not an indication of selective or arbitrary enforcement in view of evidence that the board investigated the community's opinion and reassessed its desire for the pet restriction in 2005 so as to decide whether Villas should retain the rule, and thereafter notified all homeowners the rule would be strictly enforced from that point forward. In the face of years of past uncorrected violations, the decision to strictly enforce the pet restriction was a reasonable and informed decision of the board entitled to judicial deference. (*Lamden*, *supra*, 21 Cal.4th at p. 263.) As for the lack of enforcement between 2006 and 2007, the board presented evidence that Villas' rules and regulations advised owners that because

Villas did not have a full-time security force, it was only able to take enforcement action when violations were brought to its attention. Tempkin has not presented evidence that Villas was aware owners were in violation of the rule but declined to take any action. Drawing all inferences favorable to the judgment, that evidence suggests Villas was not aware of any need for enforcement actions during that time period. And, as stated, the evidence shows that when the board learned of violations after 2005, it sent violation letters, gave owners an opportunity to address the board, then eventually levied fines.

Tempkin argues the board "must permit [him] to apply for and receive a variance in the same manner allowed to past homeowners" otherwise it "is enforcing the one[-]dog rule in an arbitrary and capricious manner." In general, "[w]hether conduct was arbitrary and capricious is a question of fact . . . ." (*Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249, 255-256.) The trial court's factual finding that Tempkin was given multiple opportunities to present his request for a variance, and did so, is supported by the evidence of Tempkin's attendance at multiple board meetings and his own testimony that he repeatedly asked for a variance. And there is no indication the board showed any "manifest disregard" (*Ironwood Owners Assn. IX v. Solomon*, *supra*, 178 Cal.App.3d at p. 773) for its CC&Rs variance provision in dealing with Tempkin's violation of the pet restriction. That provision states in part: "The board may authorize variances from compliance with any of the architectural or use provisions of this restated declaration as follows: [¶] . . . [¶] Variances shall be in writing and shall become effective upon final approval by the board or an authorized committee." (Some capitalization omitted.) The provision gives the board discretion as to whether to grant a

variance. And we read it not as requiring the board to obtain variance *requests* in writing, but as requiring a variance *granted by the board* to be written. Nor does the rule require the board to provide reasons for denial of variance requests. Tempkin compares his situation to that in *Ironwood*, but in that case, unlike this one, there was no indication that the proper entity, the governing board or the architectural control committee, ever met or made decisions they had a duty to make pursuant to the CC&Rs. (*Ironwood Owners Assn. IX v. Solomon*, at pp. 772-773.) Even assuming the facts concerning Tempkin's requests to keep his dogs and the board's action are undisputed, there is no basis to conclude the board acted arbitrarily or capriciously in treating Tempkin's requests to keep his two dogs as a variance request, and to deny it on grounds he made no showing warranting any action other than strict enforcement of the pet restriction.

IV. *Appellate Attorney Fees*

Villas asks us to award it attorney fees incurred on appeal under Civil Code section 5975 (former Civ. Code, § 1354; see *Tract 19051 Homeowners Ass'n v. Kemp* (2015) 60 Cal.4th 1135, 1138, fn. 1), which provides in part: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorneys' fees and costs." (Civ. Code, § 5975, subd. (c).) Villas argues it is additionally entitled to such an award under an attorney fee provision in Villas' CC&Rs.[7] We agree that generally,

_____

7    That provision, paragraph 15.9, states: "In the event an attorney is engaged by the Board to enforce the Governing Documents, the Association shall be entitled to recover from the adverse party to the controversy its attorneys fees and costs so incurred. In the event litigation is commenced to enforce the Governing Documents, the prevailing party shall be entitled to its attorneys fees and costs. Said costs and attorneys fees shall

22

" '[s]tatutory authorization for the recovery of attorney fees incurred at trial necessarily includes attorney fees incurred on appeal unless the statute specifically provides otherwise.' " (*Kirby v. Sega of America, Inc*. (2006) 144 Cal.App.4th 47, 62; see *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 250.) Because Civil Code section 5975 does not provide otherwise, we conclude Villas is entitled to an award of appellate attorney fees and remand the matter to the trial court for a determination of the appropriate amount of fees. (*Kirby*, at pp. 62-63.)

---

constitute a lien on the Lot which is enforceable pursuant to article 4 herein. This Section shall also apply to attorneys fees incurred to collect any post-judgment costs."

DISPOSITION

The judgment is affirmed.  The matter is remanded to the trial court for a determination of the amount of an award of attorney fees to The Villas In Whispering Palms as the prevailing party on this appeal.  Villas shall recover its costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.