Filed 9/20/13; pub. order 10/9/13 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FRIARS VILLAGE HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES I. HANSING,<br><br>    Defendant and Appellant.<br>_____<br><br>CHARLES I. HANSING,<br><br>    Plaintiff and Appellant.<br><br>    v.<br><br>FRIARS VILLAGE HOMEOWNERS ASSOCIATION,<br><br>    Defendant and Respondent, | D061360<br><br><br><br>(Super. Ct. No. 37-2010-00105362-CU-CO-CTL)<br><br><br><br><br><br><br><br>(Super. Ct. No. 37-2010-00007105-SC-SC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.

Charles I. Hansing, in pro. per., for Plaintiff, Defendant and Appellant.

Community Legal Advisors Inc., Mark T. Guithues and Edward W. Burns, for Plaintiff, Defendant and Respondent.

This appeal arises from a judgment issued after a bench trial in these two consolidated cases, on a stipulated record, (1) granting declaratory relief at the request of a homeowners association of a common interest development, that an election rule it adopted is valid and enforceable; and (2) denying an owner's request in his small claims case to challenge that rule as inconsistent with the development's governing documents.

Plaintiff, defendant and appellant Charles I. Hansing is an owner of two units, together with his wife (not a party to this action), in the Friars Village common interest development, and they reside in one unit and are members of its homeowners association (Association), the plaintiff, defendant and respondent in this case. The development is subject to the provisions of the Davis-Stirling Common Interest Development Act (the Act), which establishes standards for governance of such associations. (Civ. Code,[1] § 1350 et seq.) The Association operates under amended articles of incorporation and bylaws ("governing documents"), which specify that residents and members of the Association in good standing may be nominated for or nominate themselves for office on the board of directors (the Board).

Through its nine-member Board, the Association enacted an operating rule in the rules for elections and voting, that prevents a person from seeking a position on the Board, if that prospective candidate is related by blood or marriage to any current Board

---

[1]     All further statutory references are to the Civil Code unless otherwise indicated.

member, or to any current candidate for such office. (Rule 3.2.2(e) (the relationship rule).)[2]

According to Hansing, the adoption of this relationship rule violates his right as a homeowner to nominate himself to the Board, a right to self-nomination that is arguably guaranteed by section 1363.03, subdivision (a)(3) of the Act (hereafter § 1363.03(a)(3)). In toto, § 1363.03(a)(3) requires the Association to specify the qualifications for candidates for the Board or other elected positions, and provides that such qualifications must be consistent with the governing documents. Further, it provides that "[a] nomination or election procedure shall not be deemed reasonable if it disallows any member of the Association from nominating himself or herself to the board of directors." (§ 1363.03(a)(3).)

Hansing also contends the relationship rule violates the provisions of section 1357.100 et seq., which establish standards for operating rules for associations. "Operating rules" are regulations adopted by the Board that apply to the management and operation of the development, or to the Association's business and affairs. (§ 1357.100.) Operating rules are enforceable and valid only if they are "not inconsistent" with governing law and the governing documents (here, amended articles of incorporation and bylaws). (§ 1357.110, subd. (c).) Hansing argues the minimal standards set forth in the

---

[2]    These parties refer to the relationship rule as the "anti-nepotism rule." Black's Law Dictionary (9th ed. 2009) at page 1138, column 2, defines nepotism as "bestowal of official favors on one's relatives, especially in hiring." Merriam-Webster's Collegiate Dictionary (11th ed. 2006) at page 831, column 2, defines nepotism as "favoritism (as in appointment to a job based on kinship)." We designate the contested rule simply as the relationship rule.

Association's governing documents (residency and membership in the Association) cannot properly be altered by an operating rule such as the relationship rule, so that the Board exceeded its authority in enacting it. (§ 1357.110, subd. (b).)

On de novo review, we agree with the trial court that the Association's board was authorized to enact the relationship rule, in light of the language of the governing documents and the relevant statutes.

I

*INTRODUCTION AND LITIGATION*

Pursuant to its obligations under the governing documents, the Association's Board enacted operating rules for the management and operation of the development, and for the conduct of the business and affairs of the Association. (§ 1357.100, subd. (a).) These include a set of rules for elections and voting, adopted in 2006. Section 3.0 et seq. of these rules deals with the qualifications and nominations of directors and repeats the requirement that a Board director shall be a member of the Association and resident of the development, who is in good standing with respect to payment of assessments and other obligations. Nominations for the Board may be made by a nominating committee, from the floor at the annual meeting, or by self-nomination.

As relevant here, rule 3.2.2 was amended in 2009, to add the relationship rule as its subdivision (e). Hansing's wife, also an Association member and resident, was then serving as a member of the Board. In a letter dated September 3, 2010, Hansing requested that the Board place his name on the slate for Board office, and he objected to the relationship rule as setting a qualification which he believed to be illegal. The

4

Association's counsel responded that the Board had made a policy decision to enact the rule, since the bylaws and CC&R's were silent on the issue, and that his request would be refused.[3]

After Hansing was denied a place on the ballot, he sued the Association and some of its personnel in small claims court for damages, which he proposed to use for "properly revising and adopting an updated version of governing documents."

The Association responded in superior court with its complaint for declaratory and injunctive relief and damages, requesting an order that Hansing refrain from challenging the governing documents regarding the Board election, and abate his nuisance-like conduct. The small claims court judge transferred that case to superior court.

Hansing answered the complaint and raised numerous contentions, including the Association's alleged failure to abide by its own standards and procedures or to show that they were fair and reasonable.

The trial court decided the matter upon a stipulated record, which included documentary exhibits and the Association's declaration from its former Board president, Matthew Boomhower, who was in office when the relationship rule was implemented. He explained the reason for the relationship rule was to protect the Board from the possible wrongdoing of two Board members from the same household, and to prevent a

---

[3]    The development is subject to a declaration of covenants, conditions and restrictions (CC&R's), which is not in the appellate record. At times, trial counsel for the Association seemed to use the term CC&R's as synonymous with the Association's amended articles of incorporation. We need only discuss the terms of the amended articles of incorporation and bylaws, and we granted Hansing's request to augment the record to include full copies of them.

situation in which two members would constitute a substantial voting bloc within the nine-member Board.

The court issued a judgment declaring the relationship rule was properly adopted, is valid, and may be enforced. The court awarded no damages and ruled against Hansing on his small claims action. No statement of decision was issued, since the request for one was untimely. Hansing appeals.

II

*GOVERNING LEGAL PRINCIPLES*

A. Review

On appeal, Hansing bears the burden of overcoming the presumption that an appealed judgment or order is correct. (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1121.) "Generally, the trial court's decision to grant or deny [declaratory or injunctive relief] will not be disturbed on appeal unless it is clearly shown its discretion was abused." (*Ibid.*)

The parties do not dispute that a de novo review standard applies, since the decisive underlying facts are undisputed, raising only questions of law regarding the submitted issues. (*Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974 (*Dolan-King I*).) These questions of law are addressed de novo, on interpretation of the statutes and governing documents. (*Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 186; *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 575-577 (*Fourth La Costa*).) When a provision can be interpreted in a

6

manner that makes it legal, rather than unenforceable, that interpretation is preferred. (See *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473; § 1643.)

## B.  Policies of the Act

As stated by the California Supreme Court, " 'anyone who buys a unit in a common interest development with knowledge of its owners association's discretionary power accepts " ' "the risk that the power may be used in a way that benefits the commonality but harms the individual." ' [Citation.]  A prospective homeowner who purchases property in a common interest development should be aware that new rules and regulations may be adopted by the homeowners association either through the board's rulemaking power or through the association's amendment powers."  (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 85; see *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 253, 264 [adopting a rule of judicial deference to community association board maintenance-related decisionmaking].)

Where a court considers issues concerning unrecorded rules and regulations, "such unrecorded restrictions are not accorded a presumption of reasonableness, but are viewed under a straight reasonableness test 'so as to "somewhat fetter the discretion of the board of directors." ' [Citations.]  We understand this distinction to primarily impact the respective burdens of proof at trial."  (*Dolan-King I, supra*, 81 Cal.App.4th at p. 977.)

Association regulations are generally evaluated as "reasonable" if they are " 'rationally related to the protection, preservation and proper operation of the property and the purposes of the Association as set forth in its governing instruments,' and [are]

7

'fair and nondiscriminatory.'" (*Fourth La Costa*, *supra*, 159 Cal.App.4th at p. 577.) An unreasonable regulation is one that is "arbitrary and capricious, violates the law or a fundamental public policy or imposes an undue burden on property . . . ." (*Id*. at pp. 577-578.) An "operating rule must be tethered to reasonableness," which is defined as a standard for the development as a whole, not for an individual homeowner. (*Sui v. Price* (2011) 196 Cal.App.4th 933, 939 (*Sui*) [recently adopted parking rule did not single out the individual, offending plaintiff, and was equally applicable to all homeowners].)

Where an Association sues a homeowner to enforce its CC&Rs and enacted rules, it bears the burden of showing it followed its own standards and procedures before pursuing such a remedy. It must demonstrate that its procedures were fair and reasonable, its substantive decision was made in good faith and was reasonable, and its action was not arbitrary or capricious. (*Ironwood Owners Assn. IX v. Solomon* (1986) 178 Cal.App.3d 766, 772; *Dolan-King I, supra*, 81 Cal.App.4th 965, 979.)

Under section 1357.140, subdivision (b), a homeowner may challenge an adopted rule by requesting a special membership meeting to dispute it, within 30 days of notification of the rule change. Due to an admitted lack of any record on whether this procedure was invoked or litigated here, we decline to apply any waiver principles from it, as respondent's brief now suggests. (See *Fourth La Costa*, *supra*, 159 Cal.App.4th at p. 585 [waiver rule].)

8

III

*APPLICATION*

A. Self-Nomination Claim

Under section 1363.03(a)(3), the Association shall adopt election rules, in accordance with the procedures prescribed by section 1357.100 et seq., that do all of the following: "Specify the qualifications for candidates for the board of directors and any other elected position, and procedures for the nomination of candidates, consistent with the governing documents. *A nomination or election procedure shall not be deemed reasonable if it disallows any member of the association from nominating himself or herself for election to the board of directors.*" (Italics added.) The Association refers in its brief on appeal to unspecified legislative history that suggests this italicized language was mainly directed toward allowing qualified people to run for such office, even if the existing leadership at a particular development did not think such a person was "good enough" to serve.[4]

Hansing wants to nominate himself to the Board and merely assumes he is "qualified" to do so, consistent with the governing documents and any appropriate rules

---

[4] Under section 1363.03, subdivision (n), if this section conflicts with the provisions of the Nonprofit Mutual Benefit Corporation Law (Corp. Code, § 7110 et seq., relating to elections), the provisions of this section in the Act shall prevail. No arguments are raised about any such conflict. Further, director eligibility requirements are discussed in a practice guide in this area, which suggests that Corporations Code section 7151, subdivision (c)(3) permits corporate bylaws to specify the qualifications of directors, and that such provisions are impliedly valid and may legitimately restrict the right to be a candidate for election to such a board. (Advising Cal. Common Interest Communities (Cont.Ed.Bar 2012) § 2.7, pp. 52-53.)

9

requirements, because he is a resident and Association member in good standing. He claims any additional election restriction would be unreasonable, and since section 1363.03(a)(3) says some *election procedures shall not be deemed reasonable* if they interfere with self-nomination, this too must be an unreasonable rule that is not valid or enforceable. (See also § 1357.110, subd. (e) [an operating rule must be reasonable].)

Hansing's arguments and assumptions erroneously disregard the statutory language of the same subdivision he is relying upon, which prior to the self-nomination provision, allows and requires the Association to specify board candidate "qualifications." (§ 1363.03(a)(3).) This right of self-nomination impliedly applies to a "qualified" candidate.

By comparison to use regulations, an association's operating or election rules are "reasonable" if they are "'rationally related to the protection, preservation and proper operation of the property and the purposes of the Association as set forth in its governing instruments,' and [are] 'fair and nondiscriminatory.'" (*Fourth La Costa*, *supra*, 159 Cal.App.4th at p. 577; *Sui, supra*, 196 Cal.App.4th 933, 940.)

In this election context, the Association and its Board are not only required by statute to specify Board qualifications (§ 1363.03(a)(3)), they are also given related duties by the governing documents to protect the interests of the Association, and they must act consistently with those dictates. Pursuant to the amended articles of incorporation, the Association has the primary purposes of promoting and managing a safe and healthful development and providing for the maintenance and preservation of the property. To

10

further its purposes, the Association is given powers and privileges ordinarily allowed a corporation, to be managed by its Board.

Next, under the bylaws, the Board has certain enumerated powers and duties to manage the affairs of the Association, including adopting and publishing rules and regulations governing the use of the common area and facilities in the development, and the personal conduct of the members and guests, not inconsistent with the governing documents. The bylaws allow the Board to fill all vacancies until a successor is elected by Association members. Qualifications of board members are not further described by the bylaws.

The rationales for the basic requirements in the governing documents for Board candidacy (residency and Association membership) are evidently to ensure that Board members have the necessary interests and stakes in the outcome to carry out their duties for the overall benefit of the development. The same is true of the operating rule requirement that a board candidate may not have any outstanding debts for assessments or penalties. (Advising Cal. Common Interest Communities, *supra,* § 2.7, pp. 52-53.) Hansing does not acknowledge the underlying purposes of those basic requirements for service as a Board member.

Pursuant to the duties and powers of the Board prescribed by the bylaws, and the purposes of the Association stated in the articles, it is reasonable to interpret section 1363.03(a)(3) to allow the Board to enact an election rule specifying this qualification for directors, in pursuit of its policy decision to minimize the chance that candidates for office might have a potential conflict of interest, such as when married persons or related

11

persons seek to serve together on the Board and conduct its business, possibly in their own favor. Such a qualification rule is consistent with the interests of the Association as outlined in the governing documents. The provisions of section 1363.03(a)(3), regarding self-nomination, grant no additional protections to an otherwise unqualified or disqualified candidate.

### B. Scope of Board's Authority to Enact Rules

"Operating rules" are regulations adopted by the Board that apply to the management and operation of the development or to the business and affairs of the Association. (§ 1357.100, subd. (a).) According to Hansing, the relationship rule was enacted in excess of the Board's power, because it is inconsistent with law and the governing documents.

Of the five provisions in section 1357.110 which set forth requirements for the validity and enforceability of an operating rule, Hansing focuses mainly on subdivisions (b) and (c) (and does not dispute that the rule is in writing, as subd. (a) requires). Under section 1357.110, subdivision (b), an operating rule must be "within the authority of the board of directors of the association conferred by law or by the [governing documents]." Likewise, under section 1357.110, subdivision (c), an operating rule is enforceable and valid only if it is "not inconsistent with governing law" and the governing documents.

Hansing also seems to argue that section 1357.110, subdivision (d) was violated (i.e., that the rule was NOT adopted or amended "in good faith and in substantial compliance with the requirements of this article"), and/or that section 1357.110, subdivision (e) was not complied with (i.e., the rule is NOT reasonable). Overall, he

12

claims the relationship rule is invalid because it amounted to the Board's attempted amendment of the governing documents, to further restrict them, whereas any such amendment of the articles and the bylaws would have required membership approval by the Association, not just Board approval. (See *Rancho Santa Fe Association v. Dolan-King* (2004) 115 Cal.App.4th 28, 37; *MaJor v. Miraverde Homeowners Association* (1992) 7 Cal.App.4th 618, 627.)

In response, the Association says its Board can "augment" the provisions of the governing documents, and it is not "inconsistent" to add this Board qualification, based upon its assertedly legitimate policy reasons, such as the avoidance of spouses' or relatives' potential conflicts of interest regarding Board business.

As we read this record, the relationship rule is "not inconsistent' with governing law and the governing documents, in light of its asserted purpose and effect. (§ 1357.110, subd. (c).) Nor, under section 1357.110, subdivision (b), does it exceed the authority of the Board, as that is conferred by law or governing documents, to make rules about candidacy for Board office that are intended to improve and are reasonably related to the performance of the Board and will serve to protect its overall mission -- protecting the best interests of the Association. Elections of Board directors are clearly important elements of the business and affairs of the Association as a whole, and this relationship rule passes the test of "reasonableness," as "'rationally related to the protection, preservation and proper operation of the property and the purposes of the Association as set forth in its governing instruments,' [and] 'fair and nondiscriminatory.'" (*Fourth La Costa*, *supra*, 159 Cal.App.4th at p. 577; *Sui, supra,* 196 Cal.App.4th 933, 940.)

13

Accordingly, the Board was granted the statutory power to adopt rules about the management and operation of the development, and "the conduct of the business and affairs of the association." (§ 1357.100, subd. (a).) The record supports a conclusion that the relationship rule was a legitimate response to business concerns among Association members that allowing a voting bloc on the Board would not be in the best interests of the Association. The Board's policy decision to enact the relationship rule constitutes a reasonable attempt to balance the respective interests, and is "consistent" with the nature of the specific requirements in the governing documents and other rules, i.e., residency and membership in good standing in the Association. Such requirements legitimately promote the ability of the Board members to impartially conduct the business affairs of the development. We agree with the trial court's conclusions of law that the relationship rule is valid, enforceable and not inconsistent with the governing documents.

## DISPOSITION

Affirmed. Costs are awarded to Respondent.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


AARON, J.

14

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FRIARS VILLAGE HOMEOWNERS ASSOCIATION, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> CHARLES I. HANSING, <br><br>    Defendant and Appellant. <br> _____ | D061360 <br><br><br> (Super. Ct. No. 37-2010-00105362-CU-CO-CTL) |
| CHARLES I. HANSING, <br><br>    Plaintiff and Appellant. <br><br>    v. <br><br> FRIARS VILLAGE HOMEOWNERS ASSOCIATION, <br><br>    Defendant and Respondent, | (Super. Ct. No. 37-2010-00007105-SC-SC-CTL) <br><br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion filed September 20, 2013, is ordered certified for publication.

HUFFMAN, Acting P. J.

15