Filed 6/17/24  Mays v. Oakview Homeowners Association CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| VONETTA MAYS, | D083707 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CVRI2203467) |
| OAKVIEW HOMEOWNERS ASSOCIATION, | |
| Defendant and Respondent. | |
| VONETTA MAYS, | D083712 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CVRI2203467) |
| OAKVIEW HOMEOWNERS ASSOCIATION, | |
| Defendant and Appellant. | |

CONSOLIDATED APPEALS from a judgment and order of the Superior Court of Riverside County, Carol A. Greene, Judge. Affirmed with directions.

Lubin Pham + Caplin, Namson N. Pham and JC Chimoures for Plaintiff and Appellant in D083707 and for Plaintiff and Respondent in D083712.

Kulik Gottesman Siegel & Ware, Leonard Siegel and Justin Nash for Defendant and Respondent in D083707 and for Defendant and Appellant in D083712.

I.

INTRODUCTION

For a number of years, the Oakview Homeowner's Association (Association) was unable to achieve a quorum of its membership to elect a new board of directors while directors who had exceeded their term limits maintained their positions. Vonetta Mays petitioned the trial court for a writ of mandate directing the Association to remove currently serving directors, conduct an election to fill all board positions, and comply with the Association's governing documents. She also sought statutory penalties and attorney fees and costs under the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act or the Act).[1]

The trial court granted Mays' motion for judgment in part and issued a writ of mandate directing the Association to conduct an election to replace board directors whose terms had expired. In a subsequent order, the court denied Mays' motion for attorney's fees and costs after concluding she failed to achieve her primary litigation objective.

---

[1] The Davis-Stirling Act is codified at section 4000 to 6150 of the Civil Code. All further statutory references are to the Civil Code unless otherwise specified.

The Association appealed from the judgment resulting from the trial court's initial order , and Mays appealed from the subsequent order denying her fees and costs.[2] We affirm the trial court's orders with directions to correct clerical errors in the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Mays owns a unit in the Oakview Condominiums development located in Corona, California. The Association is a nonprofit mutual benefit corporation vested with powers to manage, operate, and maintain the common areas of the development pursuant to its Declaration of Covenants, Conditions and Restrictions (CC&Rs) and By-Laws (Bylaws) The affairs of the Association are, in turn, managed by a board of five directors. The owners are members of the Association, and they elect directors for a two-year term at the Association's annual meeting.

In recent years, the number of members attending the annual meeting was insufficient to constitute a quorum. Directors retained their positions beyond the two-year term limit and elected directors to fill vacancies. Mays ran for a seat on the board in 2020, 2021, and 2022, but year after year, a quorum was not achieved and an election of directors by the membership did not take place.

A. *Petition for Writ of Mandate and Motion for Judgment*

In 2022, Mays filed a Petition for Peremptory Writ of Mandate and a Motion for Judgment. She argued the Association violated the CC&Rs and Bylaws by failing to maintain the full number of directors and by not holding annual elections to allow the members to elect directors to replace those

---

[2]    The appeals were ordered consolidated under lead case number D083707.

3

whose terms had expired and those elected by the board. She sought a writ of mandate directing the Association to void the currently serving board or in the alternative remove directors from the board who had exceeded their term of service, hold a new election for the appointment of new board members, and comply with the Bylaws to maintain five directors and hold elections in both odd- and even-numbered years to limit terms to two years. She also sought statutory penalties under section 5145 and attorney fees under section 5975.

In its opposition to Mays' writ petition and motion, the Association claimed it complied with all governing documents. It acknowledged the members did not elect directors for a number of years, including 2018, 2019, 2020, 2021, and 2022, but argued elections could not proceed without the required quorum. The board had scheduled the next annual meeting in May 2023 for the election of all five director positions and intended to hire an independent inspector of elections.

On January 4, 2023, the trial court granted Mays' motion for judgment in part. During the hearing, the trial court explained "the order of the Court is that [the Association] do[es] need to conduct an election for all positions on the board [of] directors for which the incumbent has expired, and that would include those that are holdover terms that have not been subject to a membership vote." The court's minute order and the separately issued writ of mandate direct the Association "to conduct an election for all positions on the Board of Directors for which the incumbent's term has expired."

The minute order also includes the following reasoning: "While the Bylaws do not appear to permit an annual meeting and election to be held without a quorum, it appears that, in the absence of a quorum, the meeting *must* be adjourned no less than five days and no more than thirty days from

4

the date of the original meeting, which, in this case was May 17, 2022. Respondent has not established that it was permitted to forgo the annual meeting and election for the year." The court denied Mays' request for statutory penalties under section 5145.

Judgment was entered on January 25, 2023 and states in part: "Ms. Mays['] Motion for Judgment is GRANTED. Ms. Mays is deemed the prevailing party. [¶] The Court will separately issue a Writ of Mandate in favor of Petitioner Ms. Mays and against Respondent Oakview Homeowners' Association. The terms of the Writ are incorporated by reference as if set forth fully in this Judgment."[3] The Association filed a timely appeal.

B. *Motion for Attorney Fees*

Mays subsequently filed a motion for attorney fees and costs.[4] She claimed she was entitled to recover her attorney fees and costs as the prevailing party under section 5975, subdivision (c) of the Davis-Stirling Act and sought contractual attorney fees under section 1717, subdivision (a) based on an attorney fees provision in the CC&Rs. She requested a lodestar amount of $57,775.81 and argued the novel issues and contingent risk warranted a 1.5x multiplier.

On May 23, 2023, the trial court denied Mays' motion in its entirety after finding she failed to achieve her primary litigation objective. The

---

[3]     We augmented the record on the court's own motion to include the separately issued Writ of Mandate filed on March 1, 2023, which states in part: "You Are Commanded to conduct an election for all positions on your Board of Directors for which the incumbent's term has expired. [¶] Violation of this Order may be punished as contempt of this Court and/or as provided in Code of Civil Procedure section 1097. (Code Civ. Proc., § 1097.)"

[4]     The Association did not file a motion seeking recovery of its attorney fees and costs.

5

detailed ruling also clarified the court's initial order. The court reiterated that it had only granted Mays' underlying motion for judgment "in part" and noted that it had "rejected one of [Mays'] primary contentions, that the By-laws require no quorum." The order further explained: "While under the [January 4, 2023] ruling, the [Association] *must* continue an election if the quorum requirement is not satisfied, because the quorum requirement remains in place, it is not clear that the [Association] will be able to conduct an election since it is likely that, as in past years, the majority of homeowners needed for a quorum will not participate in the election." (Italics added.)

Mays filed a timely appeal.

C. *May 2023 Annual Meeting and Election Proceedings*

To determine if the Association's appeal had been rendered moot by the election that had been scheduled for May 2023, we ordered supplemental briefing addressing the following questions: "(1) Has 'an election for all positions on the Board of Directors for which the incumbent's term has expired' been conducted since the court entered the January 25, 2023 Judgment? [¶] (2) If so, why is this appeal not moot? [¶] (3) If this appeal is moot, what effect, if any, does that have on the appeal of the May 23, 2023 order denying the motion for attorney's fees (D083707)?"

The parties confirmed an election for all five board seats had been scheduled to take place at the May 30, 2023 annual meeting. According to documents from the inspector of elections attached to the Association's letter brief, a quorum was not achieved, and the members present adjourned the meeting. A virtual meeting was then held on June 20, 2023, but a quorum was again not achieved. The members in attendance voted to forgo any further attempts, and the next annual meeting and election was scheduled

6

for May 21, 2024. In her letter brief, Mays asserts the Association "once again cancelled elections without counting any votes."

Both parties contend the Association's appeal should not be dismissed as moot, and we exercise our discretion to permit the Association's appeal to proceed in light of the ongoing nature of the controversy and the potential impact of the trial court's order on the parties' respective rights and obligations at future annual meetings and elections.[5]

## III.

## DISCUSSION

### A. *Applicable Law and Standards of Review*

A homeowner's association has been described as a quasi-government entity that must be held to a high standard of responsibility. (*Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 651.) " 'The business and governmental aspects of the association and the association's relationship to its members clearly give rise to a special sense of responsibility upon the officers and directors . . . . This special responsibility is manifested in the requirements of fiduciary duties and the requirements of due process, equal protection, and fair dealing.' [Citation.]." (*Ibid.*) To that end, an association must comply with the applicable standards set forth in the Davis-Stirling Act and must operate in accordance with its own governing documents. To the extent of any conflict between an association's governing documents and the Act, the Act "shall prevail" (§ 4205, subd. (a)), and to the extent of any conflict

---

[5] A court may exercise its discretion to retain and decide an issue which is technically moot when the issue is " 'presented in the context of a controversy so short-lived as to evade normal appellate review' " or is "likely to affect the future rights of the parties." (See *Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 921-922.)

between an association's CC&Rs and bylaws, the CC&Rs "shall prevail" (§ 4205, subd. (c)).[6]

To the extent the trial court reviewed the evidence, drew inferences from the presented facts, or resolved disputed factual issues, we review its findings under a substantial evidence standard and indulge all reasonable inferences to support the trial court's order. (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 872.)

Interpretation of a homeowner's association's governing documents and the applicable sections of the Davis-Stirling Act is subject to de novo review. (*Friars Village Homeowners Assn. v. Hansing* (2013) 220 Cal.App.4th 405, 411 (*Friars Village*); see also *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974.) We interpret the pertinent CC&Rs and Bylaws governing the rights and responsibilities at issue in this appeal using the same rules that apply to the interpretation of contracts with a view toward enforcing the reasonable intent of the parties as it existed at the time the governing documents went into effect, " ' "so far as the same is ascertainable and lawful." ' " (*Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 575; see also *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 380–381; *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1410.) Where, as here, the trial court's interpretation of the Association's governing

---

[6] Here, there is no conflict between the CC&Rs and the relevant Bylaws. We reject Mays' argument that "Special Class A Voting Rights" set forth in article V, section 6 the CC&Rs empowers the current membership to elect at least one board director at any election. Recorded over 40 years ago, the CC&Rs established temporary Class A and B voting memberships while title to the units transferred from the developer to individual owners. The class distinction ceased to exist as of "the second anniversary of the original issuance of the final subdivision public report for the Project." (See CC&Rs, art. V, §§ 4–6.)

8

documents did not turn on the credibility of extrinsic evidence, we independently interpret the meaning of the written instruments. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866.)

We construe language in the context of each instrument as a whole, and in the circumstances of this case. (See *Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867.) If language is capable of two different reasonable interpretations, we interpret it to make it "lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (§ 1643; see also *Harvey v. The Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 817–818.)

We review a trial court's prevailing party determination and award of attorney fees, if any, for abuse of discretion. (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94.) The test is whether the trial court exceeded the bounds of reason, and if two or more inferences can reasonably be deduced from the facts, " ' " ' "the reviewing court has no authority to substitute its decision for that of the trial court." ' " ' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 591.)

B. *Association's Governing Documents*

With these guidelines in mind, we first summarize the pertinent portions of the Association's governing documents.

A "duly elected" five-member board manages the affairs of the Association. (See CC&Rs, art. I., § 5; Bylaws, art. V, § 1 as amended Apr. 27, 1988.) Absent a court order, the Association and board are vested with the power to enforce the provisions of the Bylaws. (See CC&Rs, art. VII.)

9

The members of the Association "shall elect" board directors at the Association's annual meeting to serve for a term of two years. (See Bylaws, Amend. to art. V, § 2.).[7] Each member is entitled to one vote for each unit owned. (*Id.*, art. III, § 3.) Cumulative voting is required, and the candidate receiving the largest number of votes "shall be elected." (*Id.*, art. V, § 4.)

In the event of a death, resignation, or removal of a director before the expiration of their two-year term or "in case the [m]embers fail to . . . elect the full number of authorized directors," a majority of the remaining directors may elect directors to fill such vacancies until the next annual meeting when the members will elect a successor(s) for a full two-year term. (*Id.*, art. V, §§ 5 [removal of a director], 6 [other vacancies].) The board may also call a mid-year special meeting of the membership for that purpose. (*Id.*, § 6.) The members are authorized, "at any time," to elect directors to fill any vacancy not filled by the directors. (*Ibid.*)

Annual meetings and special meetings of the membership (see Bylaws, art. IV, §§ 2, 3) require a quorum of 50 percent of the voting power of the Association "for any action except as otherwise provided [in the Association's governing documents]." (*Id.*, art. IV, § 5.) "If any meeting cannot be held because a quorum is not present, the Members present . . . may adjourn the meeting to a time not less than five (5) days nor more than thirty (30) days from the time of the original meeting was called. The quorum for an adjourned meeting shall be fifty percent (50%) of the total voting power of the Association." (*Ibid.*) "If a time and place for the adjourned meeting is not fixed by those in attendance at the original meeting, or if for any reason a new date is fixed for the adjournment meeting after adjournment, notice of

---

7    Three directors are elected in odd-numbered years, and two directors are elected in even-numbered years.

the time and place for the adjourned meeting shall be given in the manner prescribed for all meetings, annual or special." (*Ibid.*)

   C. *The Association's Appeal*

The Association raises only one issue on appeal—"whether the trial court erred when it determined that the Bylaws require the Association to adjourn the annual meeting to another date in the event quorum is not achieved."[8]  It challenges the trial court's conclusion that, "in absence of a quorum, the meeting *must* be adjourned no less than five days and no more than thirty days from the date of the original meeting." (Italics added.)  It points to the permissive language in article IV, section 5 of the Bylaws stating, "the Members present . . . *may* adjourn the meeting" (emphasis in original) and argues the trial court ignored this "clear and explicit" language that vested the members with the right, but not a duty, to adjourn the meeting to another date.  The Association further argues the Bylaws expressly and unequivocally empower the "[m]embers present," *not* the Association, to adjourn a meeting if a quorum is not reached.  (See Bylaws, art. IV, § 5.)  It contends the trial court's order requiring the Association to hold another meeting, even if the members present vote to forgo another attempt to achieve a quorum, "usurp[s] the power of the . . . membership as vested to it by the Bylaws."  We disagree.

The trial court's order and writ of mandate echo the intent reflected in the Association's governing documents.  The CC&Rs and Bylaws make clear that a "duly elected" five-member board "shall" manage the affairs of the Association (see CC&Rs, art. I, § 5; Bylaws, Amend. to art. V, § 1), and the members "*shall* elect" directors at the "*Annual* Meeting" for a two-year term.

---

[8]    Mays did not file a cross-appeal and cannot retroactively challenge the trial court's denial of the additional relief requested in her writ petition.

11

(See Bylaws, art. V, §§ 1, 2, as amended; italics added.) And the evidence supported the trial court's implied finding that the Association, through its board, failed to comply with the governing documents by not holding annual elections to replace board directors whose terms had expired. It was undisputed that in recent years, rather than the members electing new board members annually in accordance with the Bylaws, directors retained their positions beyond the two-year term limit (e.g., board president, William L. Chasteen, had remained on the board for over five years as of December 2022). Similarly, although the board was permitted to fill vacant positions as they arose, successors were not elected by the members at the next annual meeting or at a special meeting called for that purpose as required.

The trial court's conclusion that the Association failed to "establish[ ] that it was permitted to forgo the annual meeting and election for the year" is directly supported by the governing documents. Absent a court order to the contrary, the Association and board are vested with the power "to enforce the provisions of [the CC&Rs] . . . and Bylaws." (See CC&Rs, art. VII.) The Association's suggested interpretation that the membership "may" or "may not" adjourn the meeting to another date and time if a quorum is not achieved would defeat the governing documents' express intent that members "shall elect" directors at the annual meeting and would serve to divest the members of their right and *responsibility* to elect board directors. (See Bylaws, art. V, §§ 1, 2, as amended [board elections at the annual meeting], 6 [election of successors at the annual meeting or special meeting of the membership].) Even in the face of a vote by the members present to forgo another meeting if a quorum is not achieved, the Bylaws require the Association to notice the time and place for another meeting. (*Id.*, art. IV, §§ 4 [the Association notices all meetings of the membership], 5 ["If a time

12

and place for the adjourned meeting is not fixed by [the members] in attendance at the original meeting, . . . notice of the time and place for the adjourned meeting shall be given in the manner prescribed for all meetings, annual or special."].) The board may also call a special meeting of the membership for that purpose. (*Id.*, § 3.)

The Association failed to enforce the governing documents, and both its actions and inactions resulted in an abuse of power that occurs "when incumbent board directors try to perpetuate their own power by failing to hold regular homeowner meetings or elections." (*Takiguchi v. Venetian Condominiums Maintenance Corp.* (2023) 90 Cal.App.5th 880, 883.) The Association bears the burden of overcoming the presumption that an appealed order is correct. (*Friars Village, supra*, 220 Cal.App.4th at p. 411.) The Association's arguments fail to establish any error.[9] The trial court's order and writ of mandate are legally correct and will not be disturbed on appeal. (See *Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1121 [a trial court's decision to grant declaratory relief will generally not be disturbed on appeal absent a clear abuse of discretion].)

D. *Mays' Appeal*

Where, as here, a party had sought and obtained nonmonetary declaratory relief, the trial court may award costs to a prevailing party or

---

[9]    The Association does not assert compliance with the court's order is impossible, and it acknowledges in its reply brief that the Davis-Stirling Act has since been amended to address the difficulties faced by associations when a quorum is not present. Effective January 1, 2024, section 5115 allows an association to adjourn a meeting and proceed on another date at least 20 days after the adjourned meeting with a quorum of only 20 percent of an association's voting power. (§ 5115, subd. (d)(2), as amended by Stats. 2023, ch. 303, § 1.)

find that neither party prevailed and deny costs on that basis. (*Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1248–1249.) The trial court determined Mays did not prevail because she failed to achieve her primary litigation objective.

On appeal, Mays insists she is entitled to recover her reasonable attorney fees and costs as the prevailing party under section 5975 of the Davis-Stirling Act and under section 1717 based on an attorney fees provision in the CC&Rs. Mays also argues for the first time on appeal that she is entitled to recover fees and costs under section 5145 of the Davis-Stirling Act.

Section 5975, subdivision (c) of the Davis-Stirling Act provides for the recovery of reasonable attorney fees and costs incurred by a prevailing homeowner in an action to enforce governing documents of an association. However, the trial court may properly deny fees if it determines there was no prevailing party (see *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574), or if the homeowner did not prevail " 'on a practical level' by achieving its main litigation objectives." (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 260, quoting *Heather Farms*, at p. 1574.)

The trial court properly compared " ' "the extent to which each party ha[s] succeeded and failed to succeed in its contentions." ' " (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 774 (*Almanor*) and determined Mays failed to achieve her primary litigation objective of obtaining a writ of mandate "directing the [Association] to void the currently serving Board" and hold an election that would result in a new Board. The court also noted it had only granted Mays' underlying motion for judgment "in part rather than in its entirety" and had "rejected one of [Mays'] primary contentions, that the [Bylaws] require no quorum."

We also observe that Mays failed to obtain additional relief she specifically sought in her writ petition, including a writ of mandate "directing the [Association] to remove directors from the Board," specific mandates requiring the Association to abide by sections 1 and 2 of article V of the Bylaws (requiring a minimum of five directors and staggered elections), and statutory penalties pursuant to Civil Code section 5145. Considering the limited relief granted by the trial court, we conclude the trial court's determination that Mays was not a prevailing party entitled to fees under section 5975 was a proper exercise of its discretion.

Nor can Mays recover her fees and costs based on section 1717.[10] Mays relies on an inapplicable attorney fees provision in article VI, section 11 of the CC&Rs that permits the Association to recover attorney fees and costs incurred in an action to collect delinquent assessments. Mays' reliance on *Arias v. Katella Townhouse Homeowners Assn., Inc.* (2005) 127 Cal.App.4th 847 is misplaced because, unlike this case, the CC&Rs in *Arias* included an

[10]    Section 1717, subdivision (a) provides "where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party . . . ."

15

attorney fees provision applicable to actions by homeowners to enforce the governing documents. (*Id*. at p. 852.) The trial court's May 23, 2023 order erroneously misquoted article VI, section 11 of the CC&Rs entitled "Effect of Nonpayment of Assessments; Remedies of the Association" by including unrelated bracketed language in its May 23, 2023 order: "[t]he CCRs includes a attorneys' fees provision that requires that 'any judgment rendered in any such [action to enforce the governing documents] shall include . . . court costs and reasonable attorneys' fees.'" (*Sic*.; original alterations.) This error does not warrant reversal since the court ultimately denied Mays' request for fees. (See *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329–330 [a trial court's judgment will not be disturbed on appeal "merely because given for a wrong reason"].)

For the first time on appeal, Mays asserts she is entitled to recover her fees and costs under section 5145.[11] Generally, "a party may not for the first time on appeal change [the] theory of recovery" (*Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1256), and such a claim is considered waived or forfeited. The denial of Mays' request to recover her attorney fees does not present an important issue of public policy that would warrant a more forgiving approach, and "[o]nly when the issue presented involves purely a legal question, on an uncontroverted record and requires no factual determinations, is it appropriate to address new theories." (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 958.) Here, the trial court denied Mays' claim for statutory penalties under section 5145 in its January 4, 2023 order and impliedly found she did not prevail on that statutory basis. "[W]e do not

---

11     Section 5145, subdivision (b) states: "A member who prevails in a civil action to enforce the member's rights pursuant to this article shall be entitled to reasonable attorney's fees and court costs, and the court may impose a civil penalty of up to five hundred dollars ($500) for each violation."

substitute our judgment for that of the trial court when more than one inference can be reasonably deduced from the facts." (*Almanor, supra*, 246 Cal.App.4th at p. 776; see also *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1154 [the trial court's order is presumed correct, and " 'all intendments and presumptions are indulged to support the [order].' "].)

The trial court did not abuse its discretion by denying Mays' motion for attorney fees and costs, and we affirm its order.

E. *Correction of the Judgment*

The judgment signed by the trial court on January 20, 2023 and filed on January 25, 2023 states in part: "Ms. Mays Motion for Judgment is GRANTED. Ms. Mays is deemed the prevailing party." However, the trial court's January 4, 2023 order underlying the judgment states the trial court granted Mays' motion for judgment "in part" and neither the minutes nor the transcript include any finding or discussion of "prevailing party." The language in the judgment also directly contradicts the trial court's May 23, 2023 order in which the trial court expressly reiterated that it had only granted Mays' motion for judgment "in part" and found Mays was *not* the prevailing party.

The trial court signed the proposed judgment submitted by Mays' counsel over two weeks after issuing its initial order, and the language in the judgment is directly at odds with the court's orders. The record makes clear the language contained in the formal judgment "cannot reasonably be attributed to an exercise of judicial consideration or discretion." (See *Aspen Internat. Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1204 (*Aspen*).) "[T]he inadvertence of a judge in signing a judgment . . . which does not correctly embody or carry out the judgment or decree as previously judicially

17

ordered is a clerical, rather than a judicial error, which on being called to the attention of the court may be corrected by a *nunc pro tunc* order." (*Wilson v. Wilson* (1948) 88 Cal.App.2d 382, 384; original italics.) We direct the trial court to correct the inconsistent language in the judgment "to conform [the trial court's] records to the truth." (*Aspen, supra*, 235 Cal.App.3d at p. 1204.)

IV.

DISPOSITION

The January 4, 2023 and May 23, 2023 orders of the trial court are affirmed. The trial court is directed to correct the formal judgment signed on January 20, 2023 and filed on January 25, 2023 nunc pro tunc to accurately state "Mays' Motion for Judgment is granted in part" and to strike "Ms. Mays Motion for Judgment is GRANTED. Ms. Mays is deemed the prevailing party."

Each party is to bear their own costs on appeal.

McCONNELL, P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.

18